MAXWELL *v.* BISHOP, PENITENTIARY
SUPERINTENDENT

No. 13.   Argued March 4, 1969—Reargued May 4, 1970—
Decided June 1, 1970

*Anthony G. Amsterdam* argued the cause for petitioner on the original argument and on the reargument. With him on the briefs were *Jack Greenberg, James M. Nabrit III, Norman C. Amaker, Michael Meltsner, Elizabeth DuBois,* and *George Howard, Jr.*

*Don Langston,* Deputy Attorney General of Arkansas, argued the cause for respondent on the original argument and on the reargument. With him on the brief was *Joe Purcell,* Attorney General.

*Albert W. Harris, Jr.,* Assistant Attorney General, argued the cause for the State of California as *amicus curiae* on the original argument and on the reargument. With him on the brief were *Thomas C. Lynch,* Attorney

General, and *Robert R. Granucci* and *George R. Nock,* Deputy Attorneys General. Briefs of *amici curiae* were filed by *Elmer Gertz* and *Willard J. Lassers* for the American Civil Liberties Union, Illinois Division, et al.; by *Sol Rubin* and *Samuel B. Waterman* for the National Council on Crime and Delinquency; by *Leo Pfeffer, Marvin Braiterman, Morris Dershowitz, Will Maslow, Joseph B. Robison,* and *George Soll* for the Synagogue Council of America et al.; by *Messrs. Gertz* and *Lassers* and *Alex Elson* for the American Friends Service Committee et al.; by *Warren E. Magee* and *Judah Best* for the American Psychiatric Association; by *Berl I. Bernhard, William T. Coleman, Jr., Samuel Dash, John W. Douglas, Steven Duke, William T. Gossett, Rita Hauser, Burke Marshall, Steven R. Rivkin, Whitney North Seymour,* and *Cyrus R. Vance, pro sese,* for Berl I. Bernhard et al.; by *Messrs. Amsterdam, Greenberg,* and *Meltsner, Melvyn Zarr,* and *Charles S. Ralston* for Robert Page Anderson et al., and by *Hilbert P. Zarky* and *Richard M. Mosk* for Clinton Duffy.

PER CURIAM.

In 1962 the petitioner was found guilty of rape by an Arkansas jury without a verdict of life imprisonment, and the trial court imposed a sentence of death.[1] The Arkansas Supreme Court affirmed the judgment of conviction. 236 Ark. 694, 370 S. W. 2d 113. The petitioner then sought a writ of habeas corpus in the United

---

[1] At the time of the petitioner's trial Arkansas law provided only two alternative sentences upon conviction for rape:

*"Penalty for rape.*—Any person convicted of the crime of rape shall suffer the punishment of death [or life imprisonment]." Ark. Stat. Ann. § 41–3403 (1964 Repl. Vol.).

*"Capital cases—Verdict of life imprisonment.*—The jury shall have the right in all cases where the punishment is now death by law, to render a verdict of life imprisonment in the State penitentiary at hard labor." Ark. Stat. Ann. § 43–2153 (1964 Repl. Vol.).

States District Court for the Eastern District of Arkansas, claiming, among other things, that his conviction and punishment were unconstitutional in that (1) the jury had determined the two issues of guilt or innocence and of a life or death sentence in a single proceeding, thereby precluding him from presenting evidence pertinent to the question of penalty without subjecting himself to self-incrimination on the issue of guilt; and (2) the jury had been given no standards or directions of any kind to guide it in deciding whether to impose a sentence of life imprisonment or death. The District Court denied the writ, 257 F. Supp. 710, and the Court of Appeals for the Eighth Circuit affirmed, 398 F. 2d 138. We granted certiorari limited to the two questions noted above. 393 U. S. 997.

The petitioner's trial took place long before this Court's decision in *Witherspoon* v. *Illinois,* 391 U. S. 510. The trial transcript makes evident that several prospective jurors were removed from the panel upon grounds held impermissible in the *Witherspoon* case. One prospective juror, for example, was successfully challenged for cause solely on the basis of the following exchange:

> "Q. If you were convinced beyond a reasonable doubt at the end of this trial that the defendant was guilty and that his actions had been so shocking that they would merit the death penalty do you have any conscientious scruples about capital punishment that *might* prevent you from returning such a verdict?
>
> "A. I *think* I do." (Emphasis supplied.)

Another venireman was removed from the jury panel on the basis of the following question and answer:

> "Q. Do you entertain any conscientious scruples about imposing the death penalty?
>
> "A. Yes, I am afraid I do."

Still another member of the panel was dismissed after the following colloquy:

"Q. Mr. Adams, do you have any feeling concerning capital punishment that would prevent you *or make you have any feelings about* returning a death sentence if you felt beyond a reasonable doubt that the defendant was guilty and that his crime was so bad as to merit the death sentence?

"A. No, I don't believe in capital punishment." (Emphasis supplied.) [2]

As was made clear in *Witherspoon,* "a sentence of death cannot be carried out if the jury that imposed or recommended it was chosen by excluding veniremen for cause simply because they voiced general objections to the death penalty or expressed conscientious or religious scruples against its infliction." 391 U. S., at 522. We reaffirmed that doctrine in *Boulden* v. *Holman,* 394 U. S. 478. As we there observed, it cannot be supposed that once such people take their oaths as jurors they will be unable "to follow conscientiously the instructions of a trial judge and to consider fairly the imposition of the death sentence in a particular case." 394 U. S., at 484. "Unless a venireman states unambiguously that he would automatically vote against the imposition of capital punishment no matter what the trial might reveal, it simply cannot be assumed that that is his position." *Witherspoon* v. *Illinois, supra,* at 516 n. 9.

"The most that can be demanded of a venireman in this regard is that he be willing to *consider* all of the penalties provided by state law, and that he not be irrevocably committed, before the trial has

---

[2] The record shows possible violations of the *Witherspoon* rule in the removal from the venire of at least four other prospective jurors.

begun, to vote against the penalty of death regardless of the facts and circumstances that might emerge in the course of the proceedings. If the *voir dire* testimony in a given case indicates that veniremen were excluded on any broader basis than this, the death sentence cannot be carried out . . . ." *Id.,* at 522 n. 21.

It appears, therefore, that the sentence of death imposed upon the petitioner cannot constitutionally stand under *Witherspoon* v. *Illinois.* As in *Boulden* v. *Holman,* however, we do not finally decide that question here. The situation in this case closely resembles that presented in *Boulden,* in that the petitioner's trial took place before the *Witherspoon* decision, and the *Witherspoon* issue was not raised in the District Court, in the Court of Appeals, or in the petition for certiorari filed in this Court. The reasons that persuaded us to remand the *Boulden* case to the District Court apply with equal force here: "A further hearing directed to the issue might conceivably modify in some fashion the conclusion so strongly suggested by the record now before us. Further, it is not clear whether the petitioner has exhausted his state remedies with respect to this issue. Finally, in the event it turns out, as now appears, that relief from this death sentence must be ordered, a local federal court will be far better equipped than are we to frame an appropriate decree with due regard to available [Arkansas] procedures." 394 U. S., at 484.[3]

---

[3] During oral argument of this case reference was made to the following Arkansas statute:

"*Reduction of verdict.*—The court shall have power, in all cases of conviction, to reduce the extent or duration of the punishment assessed by a jury, if, in the opinion of the court, the conviction is proper, and the punishment assessed is greater than, under the circumstances of the case, ought to be inflicted, so that the punish-

Accordingly, the judgment of the Court of Appeals is vacated, and the case is remanded to the District Court, where the issue that has belatedly been brought to our attention may be fully considered. In the action we take today, we express no view whatever with respect to the two questions originally specified in our grant of certiorari.[4]

*It is so ordered.*

MR. JUSTICE MARSHALL took no part in the decision of this case.

MR. JUSTICE BLACK, dissenting.

Since I am still of the view that *Witherspoon* v. *Illinois,* 391 U. S. 510 (1968), was erroneously decided, I dissent from the opinion of the Court in this case.

---

ment be not, in any case, reduced below the limit prescribed by law in such cases." Ark. Stat. Ann. § 43–2310 (1964 Repl. Vol.).

No effort was made by the petitioner to seek relief in the state courts under this statute. There is nothing in the record or otherwise reported to us to indicate that this remedy is not now available.

[4] We have today granted certiorari in No. 486, Misc., *McGautha* v. *California,* and No. 709, Misc., *Crampton* v. *Ohio,* in which these two questions will be considered at an early date in the 1970 Term.