PEARSON, Chief Judge.
This is an appeal to review the order denying the defendant’s petition in a CrPR 1.850, 33 F.S.A., proceeding.
On October 10, 1967, Emmett James Pa-ramore was indicted for the crime of rape. A jury trial was had and the jury found Paramore guilty of rape without a recommendation of mercy. Defendant was ad *345 judicated guilty of rape and sentenced to death in the electric chair.
Paramore entered his appeal to the Supreme Court of Florida to review the judgment and sentence. The Supreme Court affirmed the adjudication of guilt and sentence. Paramore v. State, Fla.1970, 238 So.2d 604.
Subsequently, Emmett Paramore filed his motion for relief under CrPR 1.8S0. In his motion, he raised four points. These points are stated verbatim as follows: (1) “Court-appointed counsel’s failure to allow the movant to take the witness stand was to the detriment of the movant;” (2) “The movant’s judgment of conviction and sentence is unlawful, illegal, and unconstitutionally rendered on the sole testimony of the prosecutrix — this error is supplemental to the former because the right to rebuttal was denied the movant;” (3) “The evidence admitted against the movant was insufficient and illegally obtained; viz., fingerprints and other articles;” (4) “The exclusion of prospective jurors, because they voiced general objections against capital punishment — thus exposed the mov-ant to a partial jury.”
The trial court concluded the petition was without merit and denied same. Paramore filed his notice of appeal to review the order denying his petition. Appellant’s court appointed counsel who has labored ardently in appellant’s behalf[1] has been unable to support from the record appellant’s allegations in (1) and (2).
On this appeal appellant urges two points. The first is that certain fingerprint evidence was improperly admitted at the trial. We have examined the allegations under this point and it is clear that they amount to nothing more than an attempt for a second appeal. The contentions regarding the admissibility of the fingerprint evidence hinge entirely upon matters which could have been argued upon the appeal from the judgment and sentence. They in no way raise a constitutional question. Under these circumstances, we are without power to grant the appellant a second appeal, Gobie v. State, Fla.App.1966, 188 So.2d 33; Chayter v. State, Fla.App.1965, 176 So.2d 382.
Appellant’s second point urges that the exclusion of prospective jurors for cause upon the ground that they objected to capital punishment violated appellant’s constitutional rights under the holdings in the Supreme Court of the United States in Witherspoon v. Illinois, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968); Boulden v. Holman, 394 U.S. 478, 89 S.Ct. 1138, 22 L.Ed.2d 433 (1969); and Maxwell v. Bishop, 398 U.S. 262, 90 S.Ct. 1578, 26 L.Ed.2d 221 (1970).
During the voir dire examination of the jurors, the following occurred: Juror Jur-main said that she objected to capital punishment. She stated, however, that she could find the defendant guilty of rape depending on the evidence. The trial judge then advised her that the defendant could still receive the death penalty, if a majority did not recommend mercy and realizing this, could she still find the defendant guilty of rape. She answered in the negative and was excused for cause.
A similar result was reached during the examination of Juror Vernon. He indicated that he could return a verdict in a rape case that carried a life sentence. The trial judge then asked him realizing that a majority might not vote for mercy could he still, find the defendant guilty of rape. Mr. Vernon answered in the negative and was excused for cause.
Juror Elder testified that she objects to capital punishment, that she could not return a verdict that carried with it the death penalty and that she felt “rather deep about this.” The trial judge excused Mrs. Elder.
*346 Next, the trial judge excused Juror La-Bell after the following cursory examination :
MR. JACOBS: Do you have any objection to capital punishment?
MRS. LaBELL: Yes, I do.
MR. JACOBS: Would this objection prevent you from .returning a verdict that rendered the defendant guilty, no matter what the evidence produced?
MRS. LaBELL: Yes.
MR. JACOBS : I appreciate your frankness.
THE COURT: You are excused, ma’am. Thank you very much.
Again, the trial judge excused another juror (Stirman) with the following cursory examination:
MR. JACOBS: Do you have any objection to capital punishment?
MR. STIRMAN: Yes, sir.
MR. JACOBS: Would this objection prevent you from returning a verdict that carried with it the death penalty, no matter what the evidence is that is produced ■ from the witness stand ?
MR. STIRMAN: Yes.
MR. JACOBS : I appreciate your frankness.
THE COURT: You are excused. Thank you very much.
Juror LeBlanc was then excused in the following manner:
MR. JACOBS: Do you have any objection to capital punishment?
MR. LeBLANC: Yes, I do.
MR. JACOBS: I will ask you the same question that I asked the others.
Would this objection, sir, prevent you from returning your verdict that carried with it the death penalty, no matter what the evidence produced from this witness stand?
MR. LeBLANC: I am afraid so.
THE COURT: Any objection, Mr. Cow-art?
MR. COWART: No.
THE COURT: You are excused, sir. Thank you very much.
Next, Juror Viera was quickly disposed of for cause as appears from the following:
MR. JACOBS: He is also a cabinetmaker.
Do you have any objection to capital punishment, sir?
MR. VIERA: I do.
MR. JACOBS: No matter what the evidence produced, you would be unable to return a verdict that carried with it the death penalty?
MR. VIERA: Yes.
THE COURT: Mr. Cowart?
MR. COWART: Okay.
THE COURT: No objection. You are excused, sir. Thank you very much.
The trial judge likewise summarily excused Juror Waters for cause as follows:
MR. JACOBS: Mrs. Waters, do you have any objection to capital punishment?
MRS. WATERS: Yes, I do.
MR. JACOBS: Is your objection so strong, ma’am that no matter what the evidence, you could not return a verdict that carried with it the death penalty?
MRS. WATERS: Yes, sir. I wouldn’t want that on my conscience.
THE COURT: You are excused, Mrs. Waters. Thank you very much.
I did not hear an objection.
*347 On each one that I excuse for cause, I want to know whether or not there is an objection on behalf of the defendant.
MR. COWART: No objection.
THE COURT: On no cause has there been an objection.
MR. COWART: The first objection that we pose, that you rule on.
THE COURT: There has been no objection up to this time.
A review of the matters presented by appellant seems to us to effectively demonstrate that the trial court applied the holding of the United States Supreme Court in Witherspoon, supra. The essence of this holding appears to be that a sentence of death cannot be carried out if the jury which imposed it was chosen by excluding prosepective jurors for cause upon the ground that they voiced genuine objections to the death penalty. The particularization of this holding is carried out in footnote 21 of Witherspoon opinion. We quote it in full because it effectively demonstrates that the trial judge followed the directions in Witherspoon ruling upon the challenges for cause in the instant case.
“The most that can be demanded of a venireman in this regard is that he be willing to consider all of the penalties provided by state law, and that he not be irrevocably committed, before the trial has begun, to vote against the penalty of death regardless of the facts and circumstances that might emerge in the course of the proceedings. If the voir dire testimony in a given case indicates that veniremen were excluded on any broader basis than this, the death sentence cannot be carried out even if applicable statutory or case law in the relevant jurisdiction would appear to support only a narrower ground of exclusion.
We repeat, however, that nothing we say today bears upon the power of a State to execute a defendant sentenced to death by a jury from which the only veniremen who were in fact excluded for cause were those who made unmistakably clear (1) that they would automatically vote against the imposition of capital punishment without regard to any evidence that might be developed at the trial of the case before them, or (2) that their attitude toward the death penalty would prevent them from making an impartial decision as to the defendant’s guilt. Nor does the decision in this case affect the validity of any sentence other than one of death. Nor, finally, does today’s holding render invalid the conviction, as opposed to the sentence, in this or any other case.”
The question then evolves into a simple inquiry as to whether the Witherspoon rule has been amended or changed in the more recent cases cited by appellant. These cases are Boulden v. Holman, 394 U.S. 478, 89 S.Ct. 1138, 22 L.Ed.2d 433 (1969), and Maxwell v. Bishop, 398 U.S. 262, 90 S.Ct. 1578, 26 L.Ed.2d 221 (1970).
A thorough reading of the cases cited convinces us that these cases do not add an additional test for a prospective juror but are rather applications of the Wither-spoon rule to particular circumstances.
Having examined appellant’s contentions in his motion filed pursuant to CrPR 1.850 and finding that no grounds presented in the motion were sufficient to afford appellant relief from the judgment or sentence, we therefore hold that the trial judge did not err in his order denying the motion without evidentiary hearing.
Affirmed.

. We are informed that an application for certiorari is now pending in the U. S. Supreme Court upon a separate conviction.