**Samuel MATTHEWS, Appellant,**

**v.**

**The STATE of Texas, Appellee.**

**No. 44062.**

Court of Criminal Appeals of Texas.

Oct. 20, 1971.

John B. Patrick, Houston, for appellant.

Wiley L. Cheatham, Dist. Atty., Quero, and Jim D. Vollers, State's Atty., Austin, for the State.

OPINION

MORRISON, Judge.

The offense is murder with malice; the punishment, death.

We first consider appellant's contention that the trial court allowed and contributed to the systematic exclusion of prospective jurors who expressed general conscientious scruples against the imposition of the death penalty in violation of Witherspoon v. Illinois, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968).

When originally submitted to this Court the record, by agreement of appellant's counsel, contained only the voir dire examination of venireman Franklin R. Bar-

ber (Sr.).[1] Because of the seriousness of the question presented we ordered the remainder of the voir dire transcribed and forwarded to this Court. We are satisfied without question that the demands of Witherspoon, Boulden v. Holman, 394 U.S. 478, 89 S.Ct. 1138, 22 L.Ed.2d 433 (1969), and Maxwell v. Bishop, 398 U.S. 262, 90 S. Ct. 1578, 26 L.Ed.2d 221 (1970), were met in the voir dire of the other prospective jurors.

■ We now examine the voir dire of venireman Barber in light of those cases.

"Q All right, sir. Based on that, I'd like to ask you whether or not you have any conscientious scruples against the infliction of the death penalty as a punishment for crime in a proper case, you being the judge of what a proper case might be?

"A Well, yes. I'd say that I did.

"Q Do I understand from your answer that—that you do have conscientious scruples against the death penalty, is that correct, sir?

"A That is correct.

"Q And do I understand further, then, that your conscience would not permit you as a juror to vote to assess a death penalty in a case, no matter how serious the facts might be?

"A I believe that's correct."

The prosecutor, apparently cognizant of Maxwell v. Bishop, supra, continued to question Mr. Barber.

"Q All right, sir. In other words, as I understand, your conscience or the way you feel is so strongly against the death penalty that you, as a juror, just could never under any case, no matter what the facts were, vote to assess a death penalty in a case?

"A Well, facts alter certain—alter a man's opinion.

"Q Yes, sir. That's what I say. That's the reason I am asking you.

"A Yes. They'd have to be mighty strong, I'll say that in—

"Q Well, if they were strong, could you, as a juror, vote to assess a death penalty, could you and would you?

"A Yes. I guess I would if they were strong enough."

Mr. Barber then returned to his original position and the prosecution challenged for cause, at which time the defense was offered an opportunity to question him.

Questions by Mr. Patrick (Attorney for Appellant):

"Q Mr. Barber, getting back into the subject a little bit, the range of punishment under Article 1257 of the Vernon's Ann.Penal Code of this State is—for murder—is anything from death down to two years confinement in the penitentiary upon conviction. Assuming that you have heard the evidence in the case and decided the Defendant is guilty, you, as a juror, would be allowed to assess a punishment within that range. Possibly if the punishment decided upon by the jury was ten years or less, you could even consider probation. In a case of this nature, would you be able to consider the full range of punishment, anywhere from probation on up to the death penalty, of course depending on the facts? If the facts were bad enough, could you consider death penalty, and if they were—

"A Consider it?

"Q Yes, sir.

---

1. Another Franklin R. Barber, son of the venireman whose examination appears here, served on the jury in this trial.

"A Yes.

"Q In other words, you could consider in your deliberations the full range of punishment from possible probation all the way possibly to a death sentence?

"A I think that's right.

MR. PATRICK: We would oppose the State's challenge, your Honor."

At this juncture the trial judge attempted to resolve the inconsistency. Mr. Barber said he could consider "all the range of punishment from the minimum to the maximum." Witherspoon dictates that

"The most that can be demanded of a venireman in this regard is that he be willing to consider all the penalties provided by state law, *and that he not be irrevocably committed, before the trial has begun, to vote against the penalty of death regardless of the facts and circumstances that might emerge in the course of the proceedings.*" (Emphasis added) 391 U.S. 522, 88 S.Ct. 1777.

The record reflects some concern for whether Mr. Barber could not only consider the death penalty, but also whether it would be possible for him to *assess* it. Counsel for both the prosecution and the defense approached the bench. While ensuing conference was not preserved in the record, the colloquy following it appears:

"THE COURT: The question is: Could you—I think you have said you could consider it. We have up to that far, is that right?

"MR. BARBER: That's right.

"THE COURT: Now, if you thought the facts justified it, could you assess the death penalty in a proper case?

"MR. BARBER: Your Honor—

"THE COURT: You either can or you can't.

"MR. BARBER: All right, sir. Then I couldn't.

"THE COURT: Get on out. He's disqualified. You are excused. All right. Who's the next juror?"

We observe that an inquiry was made which went directly to the issue in question. It elicited a clear, direct, unmistakable answer.

The alternatives to concluding that the venireman understood the question and gave the answer he intended to give seem neither reasonable nor desirable. Once we determine the inconsistency can be resolved the issue is then one of method. Mr. Barber was properly excluded for cause. This ground of error is overruled.

■ Appellant's grounds of error one and two are directed to an appearance before the Judge of the 24th Judicial District Court of Refugio County on December 15, 1969 at which time he was not represented by counsel and at which time he was called upon to plead not guilty. The entire picture of the case must be considered. Appellant had appeared before the Judge of the 25th Judicial District Court of Lavaca County with his counsel on the 17th of November, 1969 and had been arraigned and the venue changed to Refugio County. He was again arraigned with counsel present at the commencement of this trial on January 19, 1970. After careful examination we have concluded that the December appearance in Refugio County District Court could not and did not injure the rights of this appellant. Cf. Hamilton v. Alabama, 368 U.S. 52, 82 S.Ct. 157, 7 L.Ed.2d 114 (1961).

■ In a separate instrument filed directly in this Court the appellant asked this Court not to consider certain instruments and testimony relating to the appointment of an attorney and arraignment. He made such an objection to the trial court who overruled the same prior to the filing of appellant's brief in the trial court. He does not assign this as ground of error in his

brief filed in the trial court as required by Article 40.09, Sec. 9, Vernon's Ann.C.C.P. We conclude this is not a question which should be considered by this Court in the interest of justice under Article 40.09, Sec. 13, V.A.C.C.P. Cf. Garcia v. State, Tex.Cr. App., 436 S.W.2d 139 (1969). His first two grounds of error are overruled.

Appellant urges as his third ground of error that the State failed to comply with Article 1.14, V.A.C.C.P. in that notice of intent to seek the death penalty was not filed at least 15 days anterior to the date of trial. The record would indicate otherwise. It includes an instrument signed by the attorney for the State which is designated as "State's Motion in a Capital Case." It reads as follows:

"Comes now the State of Texas by its District Attorney and alleges that said aforementioned cause is one which is a capital offense under the laws of the State, and makes known in open court that it will seek the death penalty in this cause. Dated December 10, 1969."

The trial judge ordered the motion filed and recorded in the minutes of the court. Jury selection began January 19, 1970.

In discussing his third ground of error appellant states that even if the State did file notice of intent to seek the death penalty in open court, there is nothing in the record which would indicate that either he or his counsel was present. Complaint of this was not made to the trial court and appellant filed no bill of exception in support of this contention. In the absence of a showing to the contrary the presumption must be indulged that no transgression of the statute took place.

Appellant next alleges systematic exclusion of blacks from the jury panel. There is no indication of the racial composition of the venire or the panel other than defense counsel's statement to the Court that the black members of the venire seemed to be at the end of the list, and that he was concerned that he would not be able to examine them. The Court ruled that the venire was selected by jury commissioners and that the veniremen would be taken in the order they appeared on the list.

In the transcribed voir dire appears the following exchange:

"THE COURT: For the benefit of the record, counsel, you and—yesterday and earlier in the day, I believe you have interrogated all the colored members of this jury panel. Do you agree to that?

"COUNSEL: I believe so. I am not sure.

"THE COURT: I wanted the record to reflect that, so there is no question."

We find nothing in the record to support appellant's contention. It is overruled.

In appellant's ground of error number six he states that the trial court proceeded to trial before a list of the names of the veniremen selected for the trial of the defendant's cause had been served on either appellant or his counsel of record for at least two days prior to trial. See Article 34.04, V.A.C.C.P. An instrument designated "Precept to Serve Copy of Names of Jurors Summoned" appears in the record. It reads in part:

"You are hereby commanded to deliver to Samuel Matthews, the defendant in the above entitled cause, the accompanied certified copy of the names of the 100 persons summoned to serve as jurors on the trial of said cause in said court."

This is dated January 12, 1970. The sheriff's return reflects a certified copy was delivered to the defendant, in person, on the same day. The trial began January 19, 1970. It would thus appear that there was compliance with Article 34.04.

Appellant next contends that the Court should have charged that if the arrest was illegal then murder with malice would be precluded from consideration.

The Court did charge the jury on illegal arrest and murder without malice. We

have examined the charge of the Court in light of appellant's contentions and conclude appellant was not prejudiced thereby.

Alleged ground of error number eleven asserts that appellant was convicted on the uncorroborated testimony of the accomplice witness Stevens. In Washburn v. State, 167 Tex.Cr.R. 125, 318 S.W.2d 627, 637 (1958), the Court said:

"If a state's witness had no complicity in the offense for which the accused is on trial, his testimony is not that of an accomplice, whatever may have been his complicity with the accused in the commission of other offenses."

There is no evidence that witness Stevens was an accomplice in the offense before us.

The judgment is affirmed.