Eddie GLENN, Petitioner,

v.

STATE OF MISSOURI, Respondent.

No. 71 C 404(1).

United States District Court,
E. D. Missouri, E. D.

March 21, 1972.

Eddie Glenn, pro se.

John C. Danforth, Atty. Gen., State of Missouri, Kenneth M. Romines, Asst. Atty. Gen., Jefferson City, Mo., for respondent.

## MEMORANDUM

MEREDITH, District Judge.

Petitioner presently confined in the Missouri State Penitentiary, has filed an amended petition for writ of habeas corpus, pursuant to 28 U.S.C. § 2254. An order to show cause issued and a response thereto has been filed.

On July 23, 1965, petitioner was found guilty by a jury in the Circuit Court of the City of St. Louis, Missouri, of murder in the first degree, and on November 26, 1965, was sentenced to death. His conviction was affirmed on direct appeal to the Missouri Supreme Court on May 13, 1968, and a rehearing was denied on June 10, 1968. State v. Glenn, 429 S.W.2d 225 (Mo.1968). Petitioner filed an application for a special order permanently setting aside the imposition of the sentence of death, which was overruled by the Missouri Supreme Court on July 8, 1968. Petitioner further states that he filed a motion to vacate sentence, pursuant to Missouri Supreme Court Rule 27.26, V.A.M.R., in the Circuit Court of the City of St. Louis, Missouri, which was denied by that court on November 12, 1969.

In support of his petition for a writ of habeas corpus, petitioner contends that his confinement is unlawful in that his constitutional rights were violated by the following: (1) the trial court erred in overruling his motion for a continuance as there was prejudicial pretrial publicity concerning his case; (2) he was denied a fair and impartial jury selected from a cross section of the community in which he was tried; (3) the trial court erred in allowing the jury to receive evidence and testimony concerning an alleged confession made by petitioner; (4) the Missouri Supreme Court erred, during the pendency of the direct-appeal proceeding and before a determination of the merits, by directing the trial court to make a nunc pro tunc determination with respect to whether the alleged confession of petitioner was voluntary; and (5) the trial court erred in its refusal to instruct the jury on consideration of a possible verdict of second-degree murder.

An examination of the official report of the decision on appeal of the Missouri Supreme Court in State v. Glenn, supra, and the order of the Missouri Supreme Court, dated July 8, 1968, overruling pe-

titioner's application to the Missouri Supreme Court for a special order permanently setting aside the imposition of the sentence of death, reveals that the five grounds presented here by petitioner were considered by the Missouri Supreme Court. Therefore, petitioner has exhausted his remedies available in the state courts. Petitioner contends that the trial court's refusal to grant him a continuation deprived him of a fair and impartial trial due to prejudicial pretrial publicity. With respect to the news articles and editorials appearing in St. Louis newspapers for a period of about two weeks before petitioner's trial of which petitioner complained, the Missouri Supreme Court found that the articles did not concern his case, but were reports of a number of assaults upon police officers (defendant was convicted of killing a police officer), and that the editorials advocated respect for law and one criticized two judges who had granted probation to two "notorious criminals". The Missouri Supreme Court held that there was no abuse of discretion by the trial court in denying the motion for a continuance. The Missouri Supreme Court further pointed out that defendant's counsel questioned all of the prospective jurors on voir dire examination concerning those articles and editorials and all of them indicated that such would not affect their decisions if chosen as jurors in the case.

■ This Court recognizes that a person's right to a fair trial can be violated even without a showing of identifiable prejudice, if the totality of the circumstances raises the probability of prejudice. Estes v. Texas, 381 U.S. 532, 85 S.Ct. 1628, 14 L.Ed.2d 543 (1965); Sheppard v. Maxwell, 384 U.S. 333, 86 S.Ct. 1507, 16 L.Ed.2d 600 (1966). However, as the Court stated in Brown v. United States, 403 F.2d 489, 491 (5th Cir. 1968), cert. den. 397 U.S. 927, 90 S. Ct. 932, 25 L.Ed.2d 106 (1970): "While we are sensitive to the due process implications of pretrial publicity, we refuse to see prejudice where none has been revealed." In the instant case there was no reasonable likelihood that prejudicial news prior to trial prevented a fair trial, or indeed that the news was prejudicial to petitioner at all. Thus, petitioner's contention is without merit.

■ Petitioner contends that the trial court erred in allowing the jury to receive evidence and testimony concerning an "alleged" confession made by petitioner to an Officer Keady on July 5, 1964, at a time when he was being detained without the benefit of counsel and was hospitalized in "critical condition" subsequent to surgery, and "under the effects of medical sedation and narcotics".

An examination of the record supports the finding of the Missouri Supreme Court that there is nothing in the record to indicate that on July 5, 1964, petitioner was suffering severe pain or that he did not fully understand the subject matter of the conversation in issue. In assuming for the purposes of his appeal, but not deciding, that the warnings as to petitioner's constitutional rights were not effective, the Missouri Supreme Court did not find the principles of Escobedo v. Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964), to be applicable to the case. Applying the "totality of the circumstances" test, recognizing that the presence or absence of advice concerning constitutional rights is a factor to be taken into consideration, the Missouri Supreme Court held that the confession was not involuntary or inadmissible as a matter of law, but was properly admitted.

As this case was tried after Escobedo v. Illinois, supra, but prior to Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), only *Escobedo* is applicable. The principles of *Miranda* do not apply to criminal trials begun before the date of the *Miranda* decision. Johnson v. New Jersey, 384 U.S. 719, 86 S. Ct. 1772, 16 L.Ed.2d 882 (1966).

The Missouri Supreme Court pointed out in regard to the inapplicability of *Escobedo* to this case, that it has frequently said that it will not extend the

ruling of *Escobedo* beyond the facts of that case, citing State v. Dixon, 411 S. W.2d 185 (Mo.1967), vacated on other grounds, 434 S.W.2d 564 (1968). In that case, the Missouri Supreme Court explained that in order for the precise holding of *Escobedo* to apply, there must be present the element of a request for counsel by the suspect and a denial by the police. A review of the record supports the position of the Missouri Supreme Court that the facts of the instant case do not call for the application of *Escobedo*.

The exact application of *Escobedo* before the *Miranda* decision was unclear. As the Supreme Court of the United States pointed out in Miranda v. Arizona, supra, 384 U.S. at 440, 86 S.Ct. at 1610:

> "This case has been the subject of judicial interpretation and spirited legal debate since it was decided two years ago. Both state and federal courts, in assessing its implications, have arrived at varying conclusions."

Although the Supreme Court broadened the application of *Escobedo* in its *Miranda* decision, this is only applicable to those whose trials began after *Miranda*. Johnson v. New Jersey, supra.

▮▮▮ The lack, or inadequacy of warnings as to constitutional rights is a factor to be taken into consideration in determining the voluntariness of a confession even in those cases before *Miranda*. See Johnson v. New Jersey, supra; Davis v. North Carolina, 384 U.S. 737, 86 S.Ct. 1761, 16 L.Ed.2d 895 (1966). But the question of whether a confession is voluntarily made turns on the totality of the circumstances in any particular case. See Boulden v. Holman, Warden, 394 U.S. 478, 89 S.Ct. 1138, 22 L.Ed.2d 433 (1969); see also Greenwald v. Wisconsin, 390 U.S. 519, 88 S.Ct. 1152, 20 L.Ed.2d 77 (1968). As the state court did not depart from proper constitutional standards, petitioner's contention that his confession was inadmissible is without merit.

▮▮ Petitioner further contends that the Missouri Supreme Court erred in allowing the trial court to make a nunc pro tunc determination on the voluntariness issue. Petitioner contends he should have been given an evidentiary hearing.

Jackson v. Denno, 378 U.S. 368, 84 S. Ct. 1774, 12 L.Ed.2d 908 (1964), established the principle that when the issue of voluntariness is raised, a defendant has a constitutional right to a full and fair hearing outside the presence of the jury, and a reliable determination of the voluntariness of a confession without regard to its truth or falsity before its admission.

During the pendency of petitioner's case on direct appeal, the Missouri Supreme Court found that the trial court had only partially complied with the requirements set forth in Jackson v. Denno, supra, and Sims v. Georgia, 385 U.S. 538, 87 S.Ct. 639, 17 L.Ed.2d 593 (1967). The Court noted that while there had been a hearing outside the presence of the jury and a determination as to the admissibility of the confession at the conclusion of that hearing, the transcript failed to show with unmistakable clarity that the trial court had found the confession to be voluntary. Thus, the Missouri Supreme Court ordered the trial court to make an express finding as to whether said confession was or was not voluntary after said trial court gave counsel notice and opportunity to present argument in regard thereto, with defendant present. In accordance with said order, the trial court found the statements to be voluntary and filed a supplemental transcript showing same. The Missouri Supreme Court notes that the trial court further stated in the supplemental transcript that it had, in fact, made a determination with respect to the voluntariness of the confession at the original hearing, but the record merely did not disclose that finding.

Petitioner submits that the subsequent hearing in the trial court during

the pendency of his appeal before the Missouri Supreme Court did not afford him the full evidentiary hearing required in that the trial court did not permit him to introduce additional evidence, but merely based its findings on the previous record. In regard to this, the Missouri Supreme Court noted that the defendant had the opportunity to offer any evidence he desired at the original hearing, and that their order to make a finding was merely for the purpose of having the trial court consider the evidence in the record and make a finding of record in the nature of nunc pro tunc on the issue in question. Petitioner contends that this is not in accord with the second *Sims* case, Sims v. Georgia, 389 U.S. 404, 88 S.Ct. 523, 19 L.Ed. 2d 634 (1967). Such contention is without merit. In that case the Supreme Court of the United States reversed a finding of voluntariness made on the record of a pretrial hearing, because in the first *Sims* case, Sims v. Georgia, 385 U.S. 538, 87 S.Ct. 639, 17 L.Ed.2d 593 (1967), the Supreme Court had already indicated that the evidence was not sufficient to support a finding of voluntariness. Such is not the case here. Thus, it is the opinion of this Court, after examining the record and the opinion of the Missouri Supreme Court in State v. Glenn, supra, that the requirements of Jackson v. Denno, supra, and its progeny were met and petitioner's contention is without merit.

■ Petitioner's next contention is that his constitutional rights were violated by the trial court's refusal to instruct the jury on considerations of a possible verdict of second degree murder, on the grounds that the indictment under which petitioner was tried did not and does not specifically charge petitioner with felony murder.

■ It is well settled that the writ of habeas corpus will not be used to test an indictment unless it is constitutionally defective. Scalf v. Bennett, Warden, 408 F.2d 325 (8th Cir. 1969), cert. den. 396 U.S. 887, 90 S.Ct. 175, 24 L.Ed.2d

161 (1969); Roth v. United States, 295 F.2d 364 (8th Cir. 1961), cert. den. 368 U.S. 1004, 82 S.Ct. 639, 7 L.Ed.2d 543 (1962); Knewel v. Egan, 268 U.S. 442, 45 S.Ct. 522, 69 L.Ed. 1036 (1925); Bergemann v. Backer, 157 U.S. 655, 15 S.Ct. 727, 39 L.Ed. 845 (1895); Keto v. United States, 189 F.2d 247 (8th Cir. 1951); Murphy v. Beto, 416 F.2d 98 (5th Cir. 1969). Such is not the case here. On direct appeal, the Missouri Supreme Court stated that if the evidence warranted an instruction of murder in the second degree, it was the duty of the Court to give it. However, the record supports the finding of the Missouri Supreme Court that there was no basis in this case for such a submission, and, moreover, that the evidence supported the felony murder submission. Therefore, petitioner's contention is without merit.

Petitioner further contends that he was denied a fair and impartial trial by a jury selected from a cross section of the community in which he was tried in that all members of the prospective jury panel who were opposed to the death penalty were stricken from jury service during jury selection at petitioner's trial.

In Witherspoon v. Illinois, 391 U.S. 510, 522, 88 S.Ct. 1770, 1777, 20 L.Ed.2d 776 (1968), the United States Supreme Court held that "a sentence of death cannot be carried out if the jury that imposed or recommended it was chosen by excluding veniremen for cause simply because they voiced general objections to the death penalty or expressed conscientious or religious scruples against its infliction."

The Court made it clear in *Witherspoon* that its holding did not involve the right of the prosecution to challenge for cause those prospective jurors who state that their reservations about capital punishment would prevent them from making an impartial decision as to the defendant's guilt or the state's right to exclude from the jury in a capital case those who say they could never vote to

impose the death penalty or that they would refuse even to consider its imposition in the case before them.

The Court reiterated the *Witherspoon* doctrine against exclusion of prospective jurors on any broader grounds than the above in Boulden v. Holman, 394 U.S. 478, 89 S.Ct. 1138, 22 L.Ed.2d 433 (1969), and Maxwell v. Bishop, 398 U.S. 262, 90 S.Ct. 1578, 26 L.Ed.2d 221 (1970). As stated in *Maxwell* at 265, 90 S.Ct. at 1580–1581:

". . . it cannot be supposed that once such people take their oaths as jurors they will be unable 'to follow conscientiously the instructions of a trial judge and to consider fairly the imposition of the death sentence in a particular case.' . . . 'Unless a venireman states unambiguously that he would automatically vote against the imposition of capital punishment no matter what the trial might reveal, it simply cannot be assumed that that is his position.' Witherspoon v. Illinois, supra, [391 U.S.] at 516 n. 9, [88 S.Ct. at 1774 n. 9].

'The most that can be demanded of a venireman in this regard is that he be willing to *consider* all of the penalties provided by state law, and that he not be irrevocably committed, before the trial has begun, to vote against the penalty of death regardless of the facts and circumstances that might emerge in the course of the proceedings. If the *voir dire* testimony in a given case indicates that veniremen were excluded on any broader basis than this, the death sentence cannot be carried out . . .' Id., at 522 n. 21 [, 88 S.Ct. at 1777 n. 21]."

Even though petitioner's trial was before the decision in Witherspoon v. Illinois, supra, the Court held its decision in that case was to be given retroactive application.

■ The dismissal of prospective jurymen in violation of the *Witherspoon* doctrine does not invalidate the conviction, but only the death sentence. As the Court pointed out in Witherspoon v. Illinois, supra, 391 U.S. at 522–523, n. 21, 88 S.Ct. at 1777: "Nor, finally, does today's holding render invalid the *conviction*, as opposed to the *sentence*, in this or any other case."

■ A review of the record of the voir dire examination in this case reveals that although most of the prospective jurors excluded for voicing objections to the death penalty were excluded only after they had acknowledged that they would not be willing to consider all of the penalties provided by state law or that they would never vote for the death penalty regardless of the facts and circumstances of the case, at least two prospective jurors appear to have been challenged for cause solely because they voiced general objections or conscientious or moral scruples against the death penalty, thereby violating the doctrine of *Witherspoon*. The following is an excerpt of the voir dire testimony of these two prospective jurors:

"Q Mr. McBride, do you have any beliefs that would prohibit you from considering the death penalty?

"A Well, no belief, but I don't know, I don't like to have any part of the death penalty, but I am not religious.

"Q I say a conscientious belief or moral scruple?

"A Yes, I do.

    *    *    *    *    *    *

"Q You are Mr. Menendez, would you consider the full range of penalty?

"A Yes, sir.

"Q Mr. Schmidt, would you?

"A I do not believe in the death penalty."

Unlike the case of Bell v. Patterson, 402 F.2d 394 (10th Cir. 1968), cert. den. 403 U.S. 955, 91 S.Ct. 2279, 29 L.Ed.2d 865 (1971), the exclusion of these two prospective veniremen eliminated all persons voicing general objections to the death penalty from the jury.

In light of the foregoing, the State will be given 60 days within which to present facts that would refute the apparent unconstitutionality of petitioner's death sentence, or to present the necessity of holding a hearing directed to this issue. If it becomes necessary to hold a hearing, this Court will appoint petitioner counsel to represent him.

Failing in this, petitioner's sentence of death cannot constitutionally stand and the State will be required to determine whether to resentence petitioner to a sentence not to exceed life imprisonment without a retrial on the issue of guilt, or to retry petitioner.

As the foregoing does not affect petitioner's conviction, and petitioner's other contentions are without merit, the petition for a writ of habeas corpus will be denied.