**Jimmy Loyd MEAD, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 68025.**

Court of Criminal Appeals of Texas, En Banc.

Jan. 12, 1983.

Rehearing Denied Feb. 16, 1983.

Allan K. Butcher and Jeff Kearney, Fort Worth, for appellant.

Tim Curry, Dist. Atty., and C. Chris Marshall, Howard Borg and J. Mike Worley, Asst. Dist. Attys., Fort Worth, Robert Huttash, State's Atty., and Alfred Walker, Asst. State's Atty., Austin, for the State.

## OPINION

TEAGUE, Judge.

### I. INTRODUCTION

Jimmy Loyd Mead, appellant, appeals his conviction for committing capital murder. After the jury found appellant guilty and answered in the affirmative the special is-

sues submitted at the punishment stage of the trial, see Art. 37.071, V.A.C.C.P., the trial court assessed appellant's punishment at death.

## II. APPELLANT'S CONTENTIONS ON APPEAL

Appellant presents in his appeal forty-five grounds of error; seventeen of which concern the selection of the jury in this cause. Because we have determined that a venireperson, Arturo Cabriales Espindola, was improperly excused by the trial court, we will only discuss appellant's ground of error number eight, which deals with the trial court's exclusion of Espindola.[1] First, however, we will discuss some past decisions of the Supreme Court of the United States, which have discussed the imposition of the death sentence.

## III. THIS COURT IS BOUND BY THE DECISIONS OF THE SUPREME COURT

■ This Court, by virtue of Article VI of the Constitution of the United States of America, is bound by the decisions of the Supreme Court of the United States. The Supreme Court has decreed that the death penalty cannot be carried out if even one prospective juror has been excused on a challenge for cause by the State, when the challenge is based solely on that venireperson's opposition to the death penalty, *unless that opposition to the death penalty results in the venireperson's inability to follow the law.* See *Adams v. Texas,* 448 U.S. 38, 100 S.Ct. 2521, 65 L.Ed.2d 581 (1980); *Lockett v. Ohio,* 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978); *Davis v. Georgia,* 429 U.S. 122, 97 S.Ct. 399, 50 L.Ed.2d 339 (1976); *Maxwell v. Bishop,* 398 U.S. 262, 90 S.Ct. 1578, 26 L.Ed.2d 221 (1970); *Boulden*

*v. Holman,* 394 U.S. 478, 89 S.Ct. 1138, 22 L.Ed.2d 433 (1969); *Witherspoon v. Illinois,* 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968); *Durrough v. State,* 620 S.W.2d 134 (Tex.Cr.App.1981); *Pierson v. State,* 614 S.W.2d 102 (Tex.Cr.App.1980).

## IV. *WITHERSPOON V. ILLINOIS*

In *Witherspoon v. Illinois,* supra, the Supreme Court held that a prospective juror may not be excluded by the trial court for cause unless that person makes it absolutely and unmistakably clear that 1) he would automatically vote against the imposition of capital punishment without regard to any evidence that might be developed at the trial of the case before him, or 2) that the person's attitude toward the death penalty would prevent him from making an impartial decision as to the defendant's guilt. Thus, as a result of *Witherspoon,* "a sentence of death cannot be chosen by excluding veniremen for cause simply because they voiced general objections to the death penalty or expressed conscientious or religious scruples against its infliction." *Witherspoon v. Illinois,* 391 U.S. at 522, 88 S.Ct. at 1777, 20 L.Ed.2d, at 784–785.

## V. *BRANCH V. TEXAS* AND THE NEW TEXAS DEATH PENALTY STATUTES

Subsequent to the Supreme Court's decision of *Witherspoon v. Illinois,* supra, that Court, in *Branch v. Texas,* decided with *Furman v. Georgia,* 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972), declared unconstitutional this State's system for imposing capital punishment. As a result of *Furman,* the Legislature of this State enacted new legislation relating to capital punishment. See Article 1257 of the 1925 Penal Code, as

1. Although we restrict our discussion in this opinion to the exclusion of venireperson Espindola, our examination of the transcription of the voir dire examination of another venireperson, June Donnelly, causes us serious concern as to whether Donnelly was properly disqualified from serving as a juror in this cause. Because of the law that if even one prospective juror has been improperly excused the death penalty cannot be carried out, we do not discuss the exclusion of Donnelly. Also, because the appellant makes no claim in any of the other grounds of error challenging the sufficiency of the evidence of either the guilt or punishment stages of the trial, and because none of the other grounds of error reflect reversible error, we have declined to address either the sufficiency of the evidence or the other grounds of error.

amended,[2] and Art. 37.071, supra. V.T.C.A., Penal Code, Sec. 19.03, of the present Penal Code of this State,[3] is substantially similar to Art. 1257, supra. Sec. 19.03 limits capital homicides to intentional and knowing murders committed in only five situations. After *Furman,* the legislature of this State also enacted a new capital-sentencing procedure. See Art. 37.071, supra. Although in *Jurek v. Texas,* 428 U.S. 262, 96 S.Ct. 2950, 49 L.Ed.2d 929 (1976), the Supreme Court was unable to agree upon an opinion, seven members of the Court did agree that the imposition of the death penalty for the crime of murder under the Texas statutes did not violate the prohibition against the infliction of cruel and unusual punishment under the Eighth and Fourteenth Amendments to the United States Constitution. For further discussion on the subject of past and present Texas law governing capital cases and the sentencing procedures involved in the imposition of the death sentence, we will refer the reader to *Furman v. Georgia,* supra, and *Jurek v. Texas,* supra.

However, we will point out that one of the most significant changes in a capital case that the new legislation brought about, as to the imposition of the death sentence,

2. Art. 1257, as amended, provided as follows:
Art. 1257. [1141] [711] [606] Punishment for murder
Text of article effective until January 1, 1974
(a) Except as provided in Subsection (b) of this Article, the punishment for murder shall be confinement in the penitentiary for life or for any term of years not less than two.
(b) The punishment for murder with malice aforethought shall be death or imprisonment for life if:
(1) the person murdered a peace officer or fireman who was acting in the lawful discharge of an official duty and who the defendant knew was a peace officer or fireman;
(2) the person intentionally committed the murder in the course of committing or attempting to commit kidnapping, burglary, robbery, forcible rape, or arson;
(3) the person committed the murder for remuneration or the promise of remuneration or employed another to commit the murder for remuneration or the promise of remuneration;
(4) the person committed the murder while escaping or attempting to escape from a penal institution;
(5) the person, while incarcerated in a penal institution, murdered another who was employed in the operation of the penal institution.
(c) If the jury does not find beyond a reasonable doubt that the murder was committed under one of the circumstances or conditions enumerated in Subsection (b) of this Article, the defendant may be convicted of murder, with or without malice, under Subsection (a) of this Article or of any other lesser included offense.
(d) If one of the circumstances or conditions enumerated in Subsection (b) of this Article is charged in an indictment, the prospective jurors shall be informed that a sentence of either death or imprisonment for life is mandatory on conviction for the offense charged. No person is qualified to serve as a juror unless he states under oath that the mandatory penalty of death or imprisonment for life will not affect his deliberations on any issue of fact.
e) in this Article:
1) "Penal institution" means an institution operated by or under the supervision of the Texas Department of Corrections or a city, county, or regional jail.
2) "Peace officer" means a person defined as such by Article 2.12, Code of Criminal Procedure, 1965, as amended.
Amended by Acts 1973, 63rd Leg., p. 122, ch. 426, art. I, § 1, aff. June 14, 1978.

3. Sec. 19.03 defines what constitutes capital murder, and provides as follows:
(a) A person commits an offense if he commits murder as defined under Section 19.-02(a)(1) of this code and:
(1) the person murders a peace officer or fireman who is acting in the lawful discharge of an official duty and who the person knows is a peace officer or firemen;
(2) the person intentionally commits the murder in the course of committing or attempting to commit kidnapping, burglary, robbery, aggravated rape, or arson;
(3) the person commits the murder for remuneration or the promise of remuneration or employs another to commit the murder for remuneration or the promise of remuneration;
(4) the person commits the murder while escaping or attempting to escape from a penal institution; or
(5) the person, while incarcerated in a penal institution, murders another who is employed in the operation of the penal institution.
(b) An offense under this section is a capital felony.
(c) If the jury does not find beyond a reasonable doubt that the defendant is guilty of an offense under this section, he may be convicted of murder or of any other lesser included offense.

is that the jury no longer assesses the death sentence, but instead makes objective findings of fact as to two or three special issues or questions submitted to it by the trial court. If the submitted questions are all answered in the affirmative, then the trial court, not the jury, assesses death. See Art. 37.071, supra. Also see *Jurek v. Texas,* supra.

## VI. JURY SELECTION IN THIS CAUSE OCCURRED PRIOR TO *ADAMS V. TEXAS*

Another decision of the Supreme Court that has had great impact upon the capital sentencing procedures of a capital case in Texas is *Adams v. Texas,* supra. We observe that jury selection in this cause occurred prior to the Supreme Court's decision of *Adams v. Texas,* supra. However, as previously noted, we are bound by that decision. The Supreme Court in Adams interpreted its decision of *Witherspoon v. Illinois,* supra, as such decision was applicable to a Texas statute, see V.T.C.A., Penal Code, Sec. 12.31(b),[4] which statute disqualifies a prospective juror who is unwilling to swear that the mandatory penalty of death or life imprisonment for the offense of capital murder will not *affect* that person's deliberations on factual issues in the case. In *Adams,* the Supreme Court held that Sec. 12.31(b) stated a disqualification standard impermissibly broader than *Witherspoon* permitted and, contrary to past decisions of this Court, see, for example, *Bodde v. State,* 568 S.W.2d 344, 348 (Tex.Cr.App. 1978), held that Sec. 12.31(b) may not be used as a basis for disqualification independent of Witherspoon. Thus, a prospective juror may not be disqualified solely pursuant to Sec. 12.31(b), but his answers to questions asked concerning how the death penalty might affect his serving as a juror must be viewed in a light dependent upon *Witherspoon.*

4. Sec. 12.31(b) provides that:
   (b) Prospective jurors shall be informed that a sentence of life imprisonment or death is mandatory on conviction of a capital felony. A prospective juror shall be disqualified from

## VII. NOT ALL PERSONS ARE QUALIFIED TO SERVE AS JURORS IN A DEATH PENALTY CASE

■ We pause to point out that the above does not mean that a prospective juror may never disqualify from serving as a juror in a capital case. We believe that the above decisions of the Supreme Court stand for the proposition that a prospective juror in a capital case is not subject to a challenge for cause by the prosecution unless that person's views reflect that regardless of what evidence may be presented by the State, the prospective juror, nevertheless, will vote "No" to at least one of the submitted special issues, or will distort the admitted evidence in such fashion as to prevent him from adhering to the applicable law governing the case; be it at the guilt or the punishment stages of the trial. Compare *Lackey v. State,* 638 S.W.2d 439 (Tex.Cr.App.1982) (Appellant's Motion for Rehearing); *Moore v. Estelle,* 670 F.2d 56 (5th Cir.1982). Also see *Porter v. State,* 623 S.W.2d 374 (Tex.Cr.App.1981); *Lockett v. Ohio,* supra; *Granviel v. Estelle,* 655 F.2d 673 (5th Cir.1981). We find that the Supreme Court, when it pointedly stated the following in *Adams v. State,* supra, has for the present time placed the perimeter upon when a prospective juror may *not* be excused because of his views toward the death penalty:

> Nor in our view would the Constitution permit the exclusion of jurors from the penalty phase of a Texas [capital] murder trial if they aver that they will honestly find the facts and answer the questions in the affirmative if they are convinced beyond reasonable doubt, but not otherwise, yet who frankly concede that the prospects of the death penalty may affect what their honest judgment of the facts will be or what they may deem to be a reasonable doubt. [100 S.Ct. at 2529].

serving as a juror unless he states under oath that the mandatory penalty of death or imprisonment for life will not affect his deliberation on any issue of fact.

## VIII. DID THE TRIAL COURT ERR IN EXCUSING VENIREPERSON ESPINDOLA?

█ With the above backdrop in mind, we will now direct our attention to the issue at bar: Did the trial court err in excusing venireperson Espindola after the State challenged the juror because of his beliefs regarding the death penalty? The record reflects that Espindola, by the initial responses he gave to questions asked by the prosecuting attorney during voir dire examination, which responses indicated Espindola's views of the death penalty and the stance he would take in answering the special issues, appears, *at that point in time,* to have been disqualified from serving as a juror in this cause. However, the record amply demonstrates that when appellant's attorney subsequently examined Espindola, the venireperson stated, inter alia, that he could listen to the evidence and answer the special issues or questions; that he would render a true verdict according to the law and the evidence; and that he would not answer the questions "untruthfully". The record further reflects the following:

Q: Would you, simply because you knew what the effect of your answers would be, simply for that reason would you deliberately answer those questions untruthful just because you knew what the effect of your answers would be?

A: I said before that I wouldn't swear untruthfully.

. . . . .

Q: And, could you set those feelings [about the death penalty] aside and look at the evidence if the Court instructed you to and look at the evidence and answer the questions truthfully based on the evidence? Could you do that?

A: I could answer the questions truthfully, yes. But, I could not put my feelings aside the way I feel.

Q: . . . and [if] you felt that the prosecutors proved to you beyond any reasonable doubt in your mind that the answers to the questions should be yes . . .

. . . . .

Q: Would you answer the questions yes?

A: Yes, I would.

Q: And, if they didn't prove to you that the answers should be yes beyond any reasonable doubt, would you answer the questions no?

A: That's right.

The record also reflects that after the above transpired no further questioning of Espindola occurred, either by the trial court or the prosecuting attorney. The State's challenge for cause was sustained and the trial court excused Espindola over the appellant's objection. We hold that the trial court erred in excusing Espindola as he was not disqualified from serving as a juror in this cause. Defense counsel effectively rehabilitated Espindola by asking explicit, clear questions to which Espindola gave clear, definite answers, showing that despite his feelings against the death penalty, he could and would truthfully answer all of the special issues according to the evidence adduced. The record reflects that Espindola never indicated or stated that he would not take the oath to render a true verdict, nor did he state that he would consciously distort the evidence so that he would be able to answer at least one special issue or question with a "No" answer. Although Espindola's feelings toward the death penalty were relevant to allow the State to intelligently exercise a peremptory challenge, that, standing alone, was insufficient reason to warrant the trial court sustaining the State's challenge for cause. Espindola was not disqualified to serve as a juror in this cause. The trial court erred in sustaining the State's challenge for cause. Cf. *Vanderbilt v. State,* 629 S.W.2d 709, 725–729 (Tex.Cr.App.1981).

## XI. THE CONVICTION MUST BE REVERSED

As previously noted, the improper exclusion of even one prospective juror by a trial court in a capital case where the death penalty has been assessed requires that a judgment of conviction be reversed. The

judgment of the trial court is therefore reversed and the cause remanded.

TOM G. DAVIS, W.C. DAVIS, McCORMICK and CAMPBELL, JJ., dissent.