No. 82–665.   SPALDING ET AL. *v.* AIKEN.   C. A. 9th Cir. Certiorari denied.   JUSTICE BLACKMUN would grant certiorari.

Statement of CHIEF JUSTICE BURGER concerning the denial of certiorari.

The time has come to consider limitations on the availability of the writ of habeas corpus in federal courts, especially

for prisoners pressing stale claims that were fully ventilated in state courts. Others have expressed frustration in coping with stale cases, see, *e. g., Illinois* v. *Allen,* 397 U. S. 337, 351, 357 (1970) (Douglas, J., concurring); *McMann* v. *Richardson,* 397 U. S. 759, 773 (1970), and this petition underscores the views of those who have expressed concern as to the misuse and abuse of the writ. Relief on claims presented many years after conviction should be limited to cases in which the petitioner can demonstrate a miscarriage of justice or a colorable claim of innocence. The astonishing facts underlying this petition are illustrative and instructive.

On October 14, 1965, a jury in King County, Wash., found Arthur Aiken and his codefendant guilty of murder in the first degree for the robbery and slayings of three gas station attendants in separate incidents within one month. Each victim was shot several times. The jury imposed the death penalty. On direct appeal, Aiken advanced numerous challenges to his conviction. Following a remand to the trial court, the Washington Supreme Court affirmed the conviction and the sentence, *State* v. *Aiken,* 72 Wash. 2d 306, 434 P. 2d 10 (1967). On petition for certiorari to this Court, the conviction was vacated and the case remanded for reconsideration in light of *Bruton* v. *United States,* 391 U. S. 123 (1968). 392 U. S. 652 (1968). After a second petition for certiorari, the conviction was again vacated and remanded for reconsideration in light of *Maxwell* v. *Bishop,* 398 U. S. 262 (1970), *Boulden* v. *Holman,* 394 U. S. 478 (1969), and *Witherspoon* v. *Illinois,* 391 U. S. 510 (1968). 403 U. S. 946 (1971). The state trial court then resentenced Aiken to three consecutive life prison terms.

On July 26, 1979, *fourteen years* after his original conviction and *eight years* after his resentencing, Aiken filed this petition in the United States District Court for the Western District of Washington under 28 U. S. C. § 2254. He raised claims concerning pretrial publicity, the voluntariness of his confession, and the trial court's failure to grant severance—

all claims that had been raised and decided a decade earlier in his first appeal to the Washington Supreme Court. All but the pretrial publicity issue had been presented in his original petition for review here.

On February 22, 1980, the District Court denied the habeas petition because Aiken had prejudiced the State by waiting more than five years before filing his petition, see Habeas Corpus Rule 9(a).[1] The Court of Appeals for the Ninth Circuit reversed, holding that prejudice may not be presumed. On remand, the State presented evidence that it could locate only 30 of the 87 witnesses who testified at trial and that 136 of the State's 138 exhibits were lost or destroyed. Finding that the evidence demonstrated that it would be difficult to retry Aikens should his petition for relief be granted, the District Court again dismissed the petition, concluding that prejudice as to retrial was also a ground for dismissal under Rule 9(a).[2] The Court of Appeals for the

---

[1] That measure provides:

"A petition may be dismissed if it appears that the state of which the respondent is an officer has been prejudiced in its ability to respond to the petition by delay in its filing unless the petitioner shows that it is based on grounds of which he could not have had knowledge by the exercise of reasonable diligence before the circumstances prejudicial to the state occurred."

As originally drafted, Rule 9(a) would have provided that a 5-year delay creates a presumption of prejudice rather than the present standard which requires the state to prove prejudice in every case, see Advisory Committee's Note to Habeas Corpus Rule 9, 28 U. S. C., p. 272. The 5-year presumption was deleted by Congress, 90 Stat. 1335, see H. R. Rep. No. 94–1471, pp. 4–5 (1976), on the grounds that it was "unsound policy to require the defendant to overcome a presumption of prejudice and that the legislation brings Rule 9(a) into conformity with other provisions of law," id., at 5 (footnotes omitted), and "into conformity with case law," id., at 5, n. 9. See also 122 Cong. Rec. 30222–30223 (1976).

[2] In so holding, the court relied on a comment in the Advisory Committee Note to the identical provision (Rule 9(a)) governing 28 U. S. C. § 2255 proceedings. That comment states:

"Subdivision (a) provides a flexible, equitable time limitation based on laches to prevent movants from withholding their claims so as to prejudice

Ninth Circuit again reversed, reasoning that Rule 9(a) allows consideration only of the State's difficulty in "respond[ing] to the [habeas] petition," and not consideration of the difficulty in retrying the petitioner. 684 F. 2d 632, 634 (1982). The District Court was ordered to entertain further proceedings pursuant to § 2254(d).

The privileges of the writ of habeas corpus are not unlimited. Rather the doctrine of laches should apply to habeas actions as it applies to other actions for relief. Alternatively, Rule 9(a) should be changed to bar relief when delay has prejudiced the state's ability to retry the petitioner.

The scope of habeas corpus as an avenue for repeated collateral attacks on criminal convictions has expanded enormously through decisions of this Court in the last three decades, see *Stone* v. *Powell,* 428 U. S. 465, 474–482 (1976). As the ability to attack criminal convictions collaterally has expanded, so too has the range of costs to the judicial system grown. As we noted last Term, collateral review undermines the interest in repose that underlies the principle of res judicata, degrades the importance of the trial, frustrates penological goals and drains the resources of the judicial system, *Engle* v. *Isaac,* 456 U. S. 107, 124–129 (1982). See also *Stone* v. *Powell, supra,* at 491, n. 31; *Brown* v. *Allen,* 344 U. S. 443, 532–548 (1953) (Jackson, J., concurring); *Schneckloth* v. *Bustamonte,* 412 U. S. 218, 259–266 (1973) (POWELL, J., concurring). See Friendly, Is Innocence Irrelevant?, 38 U. Chi. L. Rev. 142, 146–148 (1970).

Claims presented by way of habeas corpus petitions many years after conviction impose especially heavy burdens on the prison system, on society, and on the administration of justice. Our willingness to entertain these late claims tells prisoners that they need never reconcile themselves to what has happened: they need never "make peace" with society, learn a new way of life, or attempt to build a realistic future. Our

the government both in meeting the allegations of the motion *and in any possible retrial.*" (Emphasis added.) 28 U. S. C., p. 286.

society's constant willingness to reopen cases long closed tells the public that we have no confidence that the laws are administered justly. Because reprosecution becomes increasingly difficult, and sometimes impossible, as time from the original conviction elapses, such relief on the basis of stale claims often results in the permanent release of dangerous individuals without supervision of any sort.

Inmates exploit society's misplaced sentiment. When reexamination of the circumstances surrounding the detention comes late in the day, there is always a danger that process will be abused. A prisoner has an incentive to "store up" technical challenges to his conviction and then press his claims seriatim when reconsideration of his allegations is difficult and when reprosecution is impossible because key witnesses and exhibits have disappeared. Cf. *Del Vecchio* v. *United States*, 556 F. 2d 106, 109, and n. 6 (CA2 1977).[3]

> "One form of abuse said to exist is that of a prisoner, knowing he or she has a valid claim for relief, intentionally forgoing presenting that claim until evidence of guilt has dissipated so that reconviction would be impossible." ABA Standards for Criminal Justice, commentary following Standard 22–2.4 (2d ed. 1980).

I would allow summary dismissal of habeas petitions when the state can prove that the lapse of time has made reprosecution impossible. Exceptions should be limited to

---

[3] See also *United States* v. *Frady*, 456 U. S. 152 (1982) (19-year delay in asserting claim). In *Marshall* v. *Fowler*, No. 82–876, cert. denied, *post*, p. 1098, a petition presenting a claim of coerced confession was filed eight years after petitioner's original conviction. In May 1974, an Ohio trial court held a 4-day hearing on this claim, hearing 18 witnesses and generating 600 pages of transcript. A divided panel of the Court of Appeals for the Sixth Circuit nevertheless remanded the habeas petition for an evidentiary hearing. The petition raises a purely factual contention. I cannot imagine how the evidence that is received now could possibly be more probative than the evidence received eight years ago, when memories were fresh. Thus, the views expressed herein apply equally to *Marshall* v. *Fowler*.

cases where the petitioner can make a colorable claim of innocence, demonstrate that a significant miscarriage of justice has occurred, or show that his claim is based on grounds that, with the exercise of reasonable diligence, could not have been discovered earlier.