R. G. BRITTON et al., Appellant–Cross Appellee,

v.

Harold Eugene ROGERS, Appellee–Cross Appellant.

Nos. 79–1862, 79–1896.

United States Court of Appeals, Eighth Circuit.

Submitted April 17, 1980.

Decided Oct. 2, 1980.

Steve Clark, Atty. Gen., by E. Alvin Schay, Dennis R. Molock, argued, Asst. Attys. Gen., Little Rock, Ark., for Britton.

Charles E. Carter, George E. Hairston, James I. Meyerson, Asst. Gen. Counsel, argued, New York City, N.A.A.C.P., George Van Hook, Jr., El Dorado, Ark., Leon Jamison, Pine Bluff, Ark., for Rogers.

Before STEPHENSON, Circuit Judge, KUNZIG,* Judge, and McMILLIAN, Circuit Judge.

KUNZIG, Judge.

This is an appeal from an order of the federal district court[1] granting a writ of habeas corpus. Appellee–cross appellant Rogers had been sentenced to life imprisonment by an Arkansas jury upon his conviction for first–degree rape. The parties have raised several questions under the due process, equal protection and cruel and unusual punishments clauses of the United States Constitution, in particular, the question whether sentencing guidelines are mandated in a non–capital case. For the reasons hereafter stated, we find no constitutional defect in Rogers' conviction or sentence and therefore no basis to release him from prison.

* The Honorable Robert L. Kunzig, Judge, United States Court of Claims.

### I. Procedural History

In 1973, appellee–cross appellant Harold Eugene Rogers was convicted by an Arkansas jury of rape in the first degree, Ark. Stat.Ann. § 41–3401 (Supp.1973), and was sentenced to life imprisonment by the jury. Rogers appealed his conviction to the Arkansas Supreme Court, which affirmed. *Rogers v. State*, 257 Ark. 144, 515 S.W.2d 79 (1974). Subsequently, the United States Supreme Court denied his petition for certiorari. *Rogers v. Arkansas*, 421 U.S. 930, 95 S.Ct. 1656, 44 L.Ed.2d 87 (1974).

In 1977, Rogers petitioned the United States District Court for the Eastern District of Arkansas for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 (1976). The district court dismissed with prejudice all but one of the grounds alleged in his petition. *Rogers v. Britton*, 466 F.Supp. 397 (E.D.Ark.1979). Rogers' remaining ground alleged cruel and unusual punishment in violation of the eighth and fourteenth amendments to the federal constitution. The district court held that Rogers had not yet exhausted his state remedies concerning the duration of the sentence or the propriety of the sentencing process. Accordingly, he was directed to file an application for post–conviction relief with the Arkansas Supreme Court. Rogers' habeas petition in the federal district court was held pending the outcome of the application to the state court.

Ultimately, the Arkansas Supreme Court ruled against Rogers on all his state law claims. *Rogers v. State*, 265 Ark. 945, 582 S.W.2d 7 (1979) (per curiam) (en banc). He returned to the federal district court, reasserting his claim that his punishment was unlawful under the eighth and fourteenth amendments. The district court sustained Rogers' position, holding that his life sentence was constitutionally defective because the Arkansas jury had not been given instructions or standards to guide its sentencing discretion. *Rogers v. Britton*, 476 F.Supp. 1036 (E.D.Ark.1979). Accordingly,

1. The Honorable Richard S. Arnold, then United States District Judge for the Eastern District of Arkansas.

the district court granted the writ of habeas corpus. The court, however, did not order Rogers' immediate release from custody. Instead, it ordered that he would be entitled to release upon the expiration of thirty years from the date of his conviction, the minimum penalty prescribed by Arkansas law for the crime of first–degree rape at the time when the crime was committed. The court further ordered that Arkansas could retry the issue of Rogers' punishment in order to obtain a longer sentence, provided the second trial included sentencing guidelines.

Both Rogers and Britton, petitioner and respondent, respectively, in the habeas proceeding below, have appealed to this court from the lower court decisions and order. For purposes of exposition, "Britton" will henceforth be referred to as "Arkansas".

Our jurisdiction rests upon 28 U.S.C. §§ 1291 and 2253 (1976).

## II. Legal Issues

Both Rogers and Arkansas assert a number of grounds in challenging the order of the federal district court.

Rogers' grounds are as follows:

1) that the district court erroneously concluded that Rogers' constitutional right to a fair trial had not been infringed by the admission of the testimony of a witness claiming to be the victim of another rape perpetrated by Rogers; and

2) that the district court erroneously concluded that Rogers had failed to prove racially discriminatory sentencing, violative of the equal protection clause of the constitution.

Arkansas' grounds are as follows:

1) that the district court erroneously concluded that Rogers' sentence, under all the circumstances of this case, was so disproportionate and excessive as to be cruel and unusual under the eighth and fourteenth amendments; and

2) that the district court erroneously concluded that the lack of sentencing guidelines to the jury rendered the sentencing process and resulting sentence constitu-tionally defective under the eighth and fourteenth amendments.

We reject each of Rogers' grounds and generally sustain the position of Arkansas. Accordingly, we conclude that there was no basis for granting an order of habeas corpus in this case.

## III. Analysis

### A. Rogers' Grounds

#### 1. Other Crimes Testimony

 It is a tenet of the law of evidence that relevant evidence will be excluded if its probative value is outweighed by the danger of unfair prejudice. See, McCormick's Handbook of the Law of Evidence § 185, at 438–439 (2d ed. 1972). A second important principle, derived from the first, is that evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. "Other crimes" evidence may be admitted, however, when offered for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident. Id. § 190, at 447–451. When offered for these other, more sharply defined purposes, probative value can outweigh the danger of unfair prejudice.

At Rogers' trial, the court admitted the testimony of a witness claiming to be the victim of another rape perpetrated by Rogers. The circumstances of both attacks were strikingly similar and the trial court ruled the evidence relevant and admissible on the issue of identity. On appeal, the Arkansas Supreme Court affirmed this ruling, following the general principles sketched above. Rogers v. State, 257 Ark. 144, 515 S.W.2d 79, cert. denied, 421 U.S. 930, 95 S.Ct. 1656, 44 L.Ed.2d 87 (1974).

 In the habeas proceeding below, Rogers complained again of the admission of the other crimes testimony, arguing that the testimony was unfairly prejudicial and infringed his constitutional right to a fair trial. The predicate for successfully raising this claim is a showing of gross or conspicuous prejudice. See, Maggitt v. Wyrick, 533

F.2d 383, 385 (8th Cir.), *cert. denied*, 429 U.S. 898, 97 S.Ct. 264, 50 L.Ed.2d 183 (1976); *Atwell v. Arkansas*, 426 F.2d 912, 914–915 (8th Cir. 1970). The federal district court concluded that Rogers had failed to make the requisite factual showing, finding that the other crimes testimony was "not so inflammatory and prejudicial as to outweigh its clear relevance on the identity issue." *Rogers v. Britton*, 466 F.Supp. 397, 400 (E.D.Ark.1979). Consequently, Rogers' legal claim was denied.

■ Our scope of review on factual questions is limited. The court of appeals does not retry issues of fact or substitute its judgment for that of the trial court. Instead, it is our function to determine whether the findings below were supported by substantial evidence. *See, Shultz v. Nebraska*, 353 F.2d 81, 82 (8th Cir. 1965) (per curiam). In our opinion, the finding of the lower court in this case was supported by substantial evidence. Several factors lead to this conclusion.

■ First, the identity of the rapist was clearly in issue. The prosecuting witness had been blindfolded while being abducted and raped and could not make a positive identification. Another witness testified that he saw Rogers and a white woman (Rogers is black) at the scene of the crime together in a car similar to that of the rape victim. Although probative, the latter piece of evidence could not safely have been relied upon by the prosecution to establish beyond a reasonable doubt that Rogers was the rapist. *See generally, In re Winship*, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970).

Second, the circumstances of the rape for which Rogers was on trial and the rape as to which the witness was testifying were strikingly similar and tended to mark both attacks as the deed of Rogers. *See, McCormick's Handbook of the Law of Evidence* § 190, at 449 (2d ed. 1972). The witness identified Rogers as the man who raped her the night after the prosecutrix was at-

tacked. The victims· of both alleged rapes were returning to their cars at night from a grocery store when a black man, at gunpoint, abducted, blindfolded and forced each to put her head down as he drove each to a garage where the rape was perpetrated.

Rogers contends that the witness' testimony was inherently unreliable because there had been a hung jury in a previous trial of the alleged rape as to which she testified. We know of no rule of law supporting such a contention. A hung jury hardly renders the testimony of the prosecutrix inherently unreliable, especially in the absence of any indication from the jury as to the issues upon which it could not reach agreement. ·

Finally, the jury at Rogers' trial was explicitly instructed prior to commencing its deliberations that the witness' testimony was admitted solely for the purpose of establishing identity and should be considered only for that purpose.

In light of the foregoing, the lower court's finding of lack of gross, or even undue, prejudice is amply supported by the evidence. Thus, Rogers has no basis to claim lack of fair trial on this particular issue. We hold for Arkansas.

### 2. *Racially Discriminatory Sentencing*

Rogers contends that his sentence was invalid under the equal protection clause because Arkansas courts have been engaging in invidious racial discrimination with respect to sentencing for the crime of rape. Rogers is black. The district court rejected Rogers' contention.

■ Under the equal protection clause,[2] governmental action directed against blacks as a racially defined class is subject to strict scrutiny to prevent invidious discrimination. Under strict scrutiny, the governmental· action must fall absent a compelling state interest. Typically, strict scrutiny is fatal for the governmental action in question. In only one case has the Supreme Court upheld explicit racial discrimination after applying

---

**2.** It is interesting to note that Rogers has not presented to this court the legal theory linking

his alleged factual circumstances with the equal protection clause.

strict scrutiny. That was *Korematsu v. United States*, 323 U.S. 214, 65 S.Ct. 193, 89 L.Ed. 194 (1944), which upheld a military order excluding Americans of Japanese origin from designated West Coast areas following Pearl Harbor. *See*, R. Tribe, *American Constitutional Law* § 16–6 (1978).

■ The equal protection clause is applicable not only to discriminatory legislative action, but also to discriminatory governmental action in the administration and enforcement of the law. *See, Yick Wo v. Hopkins*, 118 U.S. 356, 6 S.Ct. 1064, 30 L.Ed. 220 (1886). Moreover, this court has specifically recognized that criminal sentencing is subject to the strictures of the equal protection clause. *United States v. Big Crow*, 523 F.2d 955 (8th Cir. 1975), *cert. denied*, 424 U.S. 920, 96 S.Ct. 1126, 47 L.Ed.2d 327 (1976).

The district court concluded that Rogers had failed to prove the existence of racial discrimination. This finding is supported by substantial evidence and will not be disturbed by this court. *See, Shultz v. Nebraska*, 353 F.2d 81, 82 (8th Cir. 1965) (per curiam).

■ With regard to proving racial discrimination, the Supreme Court has held that "official action will not be held unconstitutional solely because it results in a racially disproportionate impact." Instead, "[p]roof of racially discriminatory *intent* or *purpose* is required to show a violation of the Equal Protection Clause." *Village of Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252, 265–266, 97 S.Ct. 555, 563, 50 L.Ed.2d 450 (1977) (emphasis supplied); *see, Washington v. Davis*, 426 U.S. 229, 240, 96 S.Ct. 2040, 2047, 48 L.Ed.2d 597 (1976). While evidence of differential treatment may support a finding of discriminatory purpose, such evidence alone will not suffice, absent especially striking circumstances. *See, Village of Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252, 266, 97 S.Ct. 555, 563, 50 L.Ed.2d 450 (1977); *Washington v. Davis*, 426 U.S. 229, 241–242, 96 S.Ct. 2040, 2048, 48 L.Ed.2d 597 (1976).

■ Rogers asserts that black convicted rapists in Arkansas have tended to receive stiffer sentences than their white counterparts. While Rogers' sample data bear out this proposition, the divergence between white and black is not so stark as to bespeak the existence of discriminatory purpose. Of rapists sentenced to a term of years, the average term received was 19.74 years. Blacks received an average prison term of 22.21 years and whites received an average term of 18.09 years. Of the sixteen cases of life imprisonment for rape reported in the data, nine life terms were drawn by blacks, seven by whites.[3]

Accordingly, we concur in the lower court's judgment that Rogers has failed to supply the factual predicate for his equal protection claim. Arkansas must prevail.

---

**3.** Rogers also maintains that when the *victim* of a rape is white, the sentence imposed by an Arkansas court will be significantly harsher than when the victim is black. Rogers has no standing to raise this claim as a basis for invalidating his sentence. It is the black women of Arkansas, if anyone, who should be raising this claim, not Rogers, a convicted rapist. Moreover, it is not even clear whether Arkansas' black women could show sufficient injury in fact to have standing to sue in federal court. As Professor Tribe writes:

> A citizen's interest in the fair enforcement of the law by government agencies or administrators presents a particularly troubling claim as a basis for standing. Even if one assumes, as seems reasonable, that proper enforcement of the law maintains public security and provides an environment for individual productivity and tranquility, the connection between this general premise and any particular person's material interest is highly attenuated.... These perspectives manifest themselves in stringent limits on standing to challenge allegedly discriminatory administration of the criminal laws.
>
> ... Thus, while discriminatory enforcement of criminal laws may be challenged by those against whom such laws are *enforced,* persons injured by criminal conduct which goes *unpunished* because of discriminatory law enforcement do not ordinarily have standing to challenge the discrimination: a victim of an undeterred crime is not automatically deemed a victim of nonenforcement.

R. Tribe, *American Constitutional Law* § 3–19, at 87–88 (1978).

## B. Arkansas' Grounds

### 1. Cruel and Unusual Punishment: Disproportionality

■ Arkansas asserts that the district court erroneously sustained Rogers' claim that his sentence, under all the circumstances of this case, was so disproportionate and excessive as to be cruel and unusual under the eighth and fourteenth amendments.

Rogers was convicted of first degree rape, in violation of Ark.Stat.Ann. § 41–3401 (Supp.1973), as having engaged in "sexual intercourse with a female: (a) by forcible compulsion...." Pursuant to its discretion, the jury set Rogers' punishment at life imprisonment. Rogers will not be eligible for release on parole unless his life sentence is commuted to a term of years by executive clemency. When such life sentence has been commuted to a term of years, Rogers will become eligible for release on parole after having served one–third of the time to which the life sentence was commuted, with credit for good time allowances. From 1974 to 1979, thirty life sentences were commuted to a term of years by the Governor of Arkansas. See, Rogers v. State, 265 Ark. 945, 582 S.W.2d 7, 11–13 (1979) (per curiam) (en banc).

Initially, it must be noted that while the district court *pronounced* upon the issue of disproportionality, *see, Rogers v. Britton,* 476 F.Supp. 1036, 1040 (E.D. Ark. 1979); *Rogers v. Britton,* 466 F.Supp. 397, 400–402 (E.D. Ark. 1979), it never made a definitive holding to that effect. Thus, properly speaking, Arkansas has not suffered any injury upon this particular issue and there is no decision of the lower court calling for appellate review at this time. Nonetheless, in order to lay to rest this possible question respecting the legality of Rogers' confinement, we here make reference to the recent Court decision of *Rummel v. Estelle,* 445 U.S. 263, 100 S.Ct. 1133, 63 L.Ed.2d 382 (1980).

Rummel had been sentenced to life imprisonment under Texas' recidivist statute for having three times been convicted of a felony. Each of the crimes underlying Rummel's conviction as a recidivist involved the use of fraud to obtain small sums of money ranging from $28.36 to $120.75. In total, the three crimes involved slightly less than $230.00. Rummel challenged the constitutionality of his sentence, arguing that life imprisonment was grossly disproportionate upon the facts of his case, and was therefore violative of the ban on cruel and unusual punishments in the eighth and fourteenth amendments. The Supreme Court rejected this argument, holding that the length of prison sentences generally falls within the discretion of the states and is not subject to challenge on the ground of disproportionality, absent extreme facts.

Rummel is controlling in this instance and invalidates Rogers' putative disproportionality claim. Consequently, we generally sustain Arkansas' position.

### 2. Sentencing Guidelines

At Rogers' trial, the jury was authorized by Arkansas law both to determine the question of guilt and to fix sentence within the range of punishment prescribed by statute: thirty years to life. With respect to its sentencing function, the jury was given no standards to guide its discretion and Arkansas law provides none. The jury imposed a life sentence upon Rogers, the maximum allowable. The district court concluded that the imposition of a life sentence by a jury exercising standardless discretion violated the eighth and fourteenth amendments. Arkansas appeals from this determination.

In our view, there is no maintainable legal theory in support of the determination of the court below that Rogers' constitutional rights were violated by the lack of sentencing guidelines in this case. Following is our assessment—uniformly negative—of the two principal approaches which can be taken in arguing on behalf of a constitutional rule of guided discretion.

#### a. The Rule of Guided Discretion in Capital Cases

■ The eighth amendment prohibits the infliction of "cruel and unusual punish-

ments." Pursuant to this general principle, the Supreme Court has held that where discretion is afforded a sentencing body whether to impose capital punishment, "that discretion must be suitably directed and limited so as to minimize the risk of wholly arbitrary and capricious action." *Gregg v. Georgia*, 428 U.S. 153, 189, 96 S.Ct. 2909, 2932, 49 L.Ed.2d 859 (1976). This holding has spawned a line of cases in which courts have closely scrutinized the instructions which are given to juries prior to the exercise of their discretion to impose the death penalty. *See, e.g., Godfrey . v. Georgia*, 446 U.S. 420, 100 S.Ct. 1759, 64 L.Ed.2d 398 (1980); *Jurek v. Texas*, 428 U.S. 262, 96 S.Ct. 2950, 49 L.Ed.2d 929 (1976); *Gregg v. Georgia*, 428 U.S. 153, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976). The rule of guided discretion is made applicable to the states by the due process clause. *See, Robinson v. California*, 370 U.S. 660, 666, 82 S.Ct. 1417, 1420, 8 L.Ed.2d 758 (1962).

The problem left in the wake of *Gregg* is whether this constitutional mandate of guided discretion should be extended to cases where the death penalty is not a possibility. We decline so to extend the rule.

▮ It is a premise of our legal system that states enjoy broad discretion in the formulation of criminal procedures. While the states are subject to the general requirement of due process, this standard incorporates a principle of deference to the states, that is, a notion that settled state practices should not be upset in the absence of a "strong showing." *McGautha v. California*, 402 U.S. 183, 203, 91 S.Ct. 1454, 1465, 28 L.Ed.2d 711 (1971); *see, Spencer v. Texas*, 385 U.S. 554, 87 S.Ct. 648, 17 L.Ed.2d 606 (1967); *Maggitt v. Wyrick*, 533 F.2d 383, 385 (8th Cir.), *cert. denied*, 429 U.S. 898, 97 S.Ct. 264, 50 L.Ed.2d 183 (1976).

The rule of guided discretion for capital cases drew justification from the uniqueness of capital punishment, especially its utter irrevocability. *See, e.g., Rummel v. Estelle*, 445 U.S. 263, 272, 100 S.Ct. 1133, 1138, 63 L.Ed.2d 382 (1980); *Coker v. Georgia*, 433 U.S. 584, 598, 97 S.Ct. 2861, 2869, 53 L.Ed.2d 982 (1977); *Gardner v. Florida*, 430 U.S. 349, 357–358, 97 S.Ct. 1197, 1204, 51 L.Ed.2d 393 (1977); *Gregg v. Georgia*, 428 U.S. 153, 188, 96 S.Ct. 2909, 2932, 49 L.Ed.2d 859 (1976); *Woodson v. North Carolina*, 428 U.S. 280, 305, 96 S.Ct. 2978, 2991, 49 L.Ed.2d 944 (1976); *Furman v. Georgia*, 408 U.S. 238, 286–291, 92 S.Ct. 2726, 2750–53, 33 L.Ed.2d 346 (1972) (Brennan, J., concurring).

As stated by the plurality of the Court in *Woodson v. North Carolina*, 428 U.S. 280, 305, 96 S.Ct. 2978, 2991, 49 L.Ed.2d 944 (1976):

> Death, in its finality, differs more from life imprisonment than a 100–year prison term differs from one of only a year or two. Because of that qualitative difference, there is a corresponding difference in the need for reliability in the determination that death is the appropriate punishment in a specific case.

The above provides the kernel of our reluctance to extend the rule of guided discretion. In moving from capital to non–capital cases, the especially compelling concerns originally motivating the guided discretion rule are no longer operative. As a result, the values promoting deference–diversity, federalism–gain predominance. Whatever may be the benevolent purposes of a rule of guided discretion–and we do not deny them–they are generally not of sufficient weight to justify displacing Arkansas' preference on this matter. They do not, in the terms of our basic formula, amount to a "strong showing."

### b. Interest–Balancing

The lower court invites us to analyze the procedural due process issue in terms of the framework provided by *Mathews v. Eldridge*, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). *Eldridge* dictates the following interest–balancing approach:

> [O]ur prior decisions indicate that identification of the specific dictates of due process generally requires consideration of three distinct factors: First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest

through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement will entail.

*Id.*, at 334–335, 96 S.Ct. at 903. We note that *Eldridge* was initially developed for use in the administrative context and, apart from the action of the lower court in this case, has not yet been expressly employed by a federal court to test the procedures used at a criminal trial. Nonetheless, we perceive no doctrinal obstacle to extending *Eldridge* and view it as a useful specification of factors to be considered in any case raising procedural due process questions.

In extending *Eldridge* to the criminal context, however, we wish to preserve the deference which federal courts have customarily displayed when called upon to review state rules of criminal procedure. *See, supra* at 903. Accordingly, we are unwilling to find a procedural due process violation under *Eldridge* unless the private interest in obtaining a particular procedure *substantially outweighs* the governmental interest in withholding it.

Having established this basic framework, we now address the question whether *Eldridge* required the giving of sentencing guidelines in this case, as was the conclusion of the lower court. We arrive at a contrary determination.

*Private Interest.* The lower court was of the opinion that Rogers had suffered a grievous deprivation of "liberty". *Rogers v. Britton,* 476 F.Supp. 1036, 1041 (E.D. Ark. 1979). For purposes of analyzing what procedures are due Rogers at the sentencing stage, however, this is not a correct statement of the law. The Supreme Court has clearly held that a criminal conviction extinguishes whatever liberty interest a prisoner has in securing freedom before the end of his lawful sentence. *See, Greenholtz v. Inmates of the Nebraska Penal and Correctional Complex,* 442 U.S. 1, 7, 99 S.Ct. 2100, 2103, 60 L.Ed.2d 668 (1979); *Gardner v. Florida,* 430 U.S. 349, 358, 97 S.Ct. 1197, 1204, 51 L.Ed.2d 393 (1977). While, "[t]he defendant has a legitimate interest in the character of the procedure which leads to the imposition of sentence," he has "no right to object to a particular result of the sentencing process." *Gardner v. Florida,* 430 U.S. 349, 358, 97 S.Ct. 1197, 1205, 51 L.Ed.2d 393 (1977).

*The Value of the Additional Procedure.* According to *Eldridge,* "procedural due process rules are shaped by the risk of error inherent in the truthfinding process." 424 U.S. at 344, 96 S.Ct. at 907. In other words, *Eldridge* is concerned with the chance of erroneous factfinding. Under *Eldridge,* additional procedures are valued precisely in accordance with the degree to which they reduce the possibility of factual error.

In the instant case, the proposed additional procedure–sentencing guidelines–is not related to the reliability of the factfinding process. Rather, sentencing guidelines serve to focus the attention of the sentencing body upon certain specified factors and to assure greater uniformity of result. Hence, applying *Eldridge* strictly, we would be unable to ascribe any value to the proposed additional procedure.

We do not, however, insist upon this strict approach and consequently accept the position of the lower court, 476 F.Supp. at 1039–1040, that *Eldridge* should be expanded to embrace the concern of *Gregg* and its progeny that "[sentencing] discretion … be suitably directed and limited so as to minimize the risk of wholly arbitrary and capricious action." *Gregg v. Georgia,* 428 U.S. 153, 189, 96 S.Ct. 2909, 2932, 49 L.Ed.2d 859 (1976).

*Governmental Interest.* The requirement of sentencing guidelines would impose a fiscal and administrative burden upon the State of Arkansas. The drafting of such guidelines would be an extremely demanding assignment, given the multiplicity of factors which ought to be taken into account. Moreover, the logic supporting sentencing instructions cannot easily be limited to cases involving the life penalty once

we agree *arguendo* that sentencing guidelines should not be restricted to capital cases. Hence, we are quite possibly speaking of a fundamental restructuring of Arkansas criminal sentencing, at potentially great cost.

Additionally, important policies of Arkansas would be implicated by a decision to curb the discretion of the jury.

First, as the Supreme Court has noted, "one of the most important functions any jury can perform ... is to maintain a link between contemporary community values and the penal system." *Witherspoon v. Illinois*, 391 U.S. 510, 519 n.15, 88 S.Ct. 1770, 1775 n.15, 20 L.Ed.2d 776 (1968). By ordering sentencing guidelines, we would be diminishing the jury's ability to act as a transmission belt for the injection of local values.

Second, by adopting a system of standardless discretion, Arkansas has in effect opted for a system of fully individualized sentencing. *See generally, Williams v. New York*, 337 U.S. 241, 69 S.Ct. 1079, 93 L.Ed. 1337 (1949). In mandating sentencing guidelines, we would be interfering with Arkansas' apparent preference for strictly case–by–case sentencing, governed by the specific facts of each case and the good sense of the jury.

Overall, we do not find that the balancing of relevant factors favors Rogers. We certainly could not agree that Rogers' private interest substantially outweighs the governmental interest of Arkansas. Accordingly, we are unable to find a procedural due process violation arising out of the lack of sentencing guidelines.

This exhausts the second principal mode of analysis in determining whether sentencing guidelines.are constitutionally mandated. They are not.

Our conclusion limiting the rule of guided discretion to capital cases draws support from the Chief Justice's dictum that "legislatures remain free to decide how much discretion in sentencing should be reposed in the judge or jury in noncapital cases." *Lockett v. Ohio*, 438 U.S. 586, 603, 98 S.Ct. 2954, 2964, 57 L.Ed.2d 973 (1978).

Further, we note that the Fourth Circuit previously considered the same issue under discussion here and resolved it in the same manner. *Vines v. Muncy*, 553 F.2d 342, 347–348 (4th Cir. 1977).

All other arguments raised by Rogers, though not directly addressed by this opinion, have been examined and found to be without merit.

The order of the court below is hereby REVERSED.