Kirt Douglas **WAINWRIGHT**

v.

Larry **NORRIS**, Director of the Arkansas Department of Correction.

No. PB–C–92–211.

United States District Court,
E.D. Arkansas, W.D.

Nov. 3, 1993.

John W. Hall, Jr. and Walter C. Lambert, John Wesley Hall, Jr., P.C., Little Rock, AR, for petitioner.

Olan W. Reeves, Atty. General's Office, Little Rock, AR, for respondent.

### ORDER

EISELE, Senior District Judge.

Before the Court is the claim of Attorney John Wesley Hall and Attorney Craig Lambert for fees for the representation Mr. Wainwright during certain state proceedings as well as for representation after this Court officially appointed them under the Criminal Justice Act, 18 U.S.C. § 3006A and 21 U.S.C. § 848(q), for proceedings in this court.

A brief synopsis of the proceedings in this case may be helpful. In October of 1990, the Attorney General's Office contacted Mr. Lambert and asked if he and Mr. Hall's law firm would represent Mr. Wainwright and file a Rule 37 petition (state post-conviction proceeding) before his time ran out under the Rule 37 statute of limitations. They agreed to do so. That time limit was set to expire in April of 1992. In the early fall of 1991, the Attorney General's office moved to dissolve the stay of execution in place at that time. On October 28, 1991, Mr. Lambert and Mr. Hall obtained a second stay pending review of the Rule 37 petition they filed. On October 22, 1991, Mr. Lambert filed a Motion for Appointment of Counsel and Attorney's Fees with the Arkansas Supreme Court, requesting that such appointment and fees operate nunc pro tunc. That motion was summarily denied by the Arkansas Supreme Court on November 11, 1991:

"Motion of Craig Lambert to be appointed as counsel for appellant is denied. See *Murray v. Giarratano*, 492 U.S. 1 [109 S.Ct. 2765, 106 L.Ed.2d 1] (1988); *Robinson v. State*, 295 Ark. 693, 751 S.W.2d 335 (1988)."

The Rule 37 petition was denied in January of 1992, as was the motion for fees. Shortly thereafter, the Attorney General's office again moved for dissolution of the stay of execution. In April of 1992, Mr. Lambert and Mr. Hall filed a motion for appointment of counsel with this Court for a federal habeas corpus petition (and a Motion for a Stay of Execution), which the Court granted nunc pro tunc.

Mr. Hall and Mr. Lambert now petition this Court to award fees for both the state and federal proceedings, arguing that it is within this Court's discretion. After thoroughly examining the issue, the Court concludes that it may not authorize payment for the state proceedings.

The Anti–Drug Abuse Act of 1988 allows the federal courts to award attorney's fees and various expenses "at such rates or amounts as the court determines to be reasonably necessary" to effective representation in capital cases. 21 U.S.C. § 848(q)(10). This statute expressly authorizes the appointment of more than one lawyer in federal capital cases on direct and collateral review. 21 U.S.C. § 848(q)(4), (5), (6), (7). In pertinent part, the statute provides:

(4)(A) Notwithstanding any other provision of law to the contrary, in every criminal action in which a defendant is charged with a crime which may be punishable by death, a defendant who is or becomes financially unable to obtain adequate representation or investigative, expert, or other reasonably necessary services at any time either

(i) before judgment; or

(ii) after the entry of a judgment imposing a sentence of death but before the execution of that judgment;

shall be entitled to the appointment of one or more attorneys and the furnishing of such other services in accordance with paragraphs (5), (6), (7), (8), and (9).

(B) In any post conviction proceeding under section 2254 or 2255 of Title 28, seeking to vacate or set aside a death sentence, any defendant who is or becomes financially unable to obtain adequate representation or investigative, expert, or oth-

er reasonably necessary services shall be entitled to the appointment of one or more attorneys and the furnishing of such other services in accordance with paragraphs (5), (6), (7), (8), and (9).

This statute is problematic. Paragraph (4)(A) does not limit itself to potential capital cases arising under federal law, but instead broadly declares itself applicable to "every criminal action in which a defendant is charged with a crime which may be punishable by death . . ." "(n)otwithstanding any other provision of law to the contrary." This would seem on its face to apply to state capital cases as well as federal. However, the provisions for appointment of counsel were enacted as part of a new statute providing for the death penalty under federal law and it seems clear that Congress intended the quoted language to apply to federal capital crimes. Issues of federalism would prevent Congress from regulating state procedures by enacting a federal statue and this Court does not believe that Congress intended to so attempt here.

Furthermore, this statute was enacted on November 18, 1988, and such a reading would appear to be trumped by a 1989 Supreme Court opinion. Although this issue was not specifically raised in this manner, the United States Supreme Court, in a plurality decision, declared in *Murray v. Giarratano*, 492 U.S. 1, 109 S.Ct. 2765, 106 L.Ed.2d 1 (1989) that there is no federal constitutional right to counsel for indigent prisoners seeking state post-conviction relief even if that prisoner is under sentence of death. The statutory argument was not raised [1]; however, reading the federal statute in the broad sense would be directly contrary to the *Murray* decision.

Other courts which have looked at this issue have refused to allow federal funds to be spent on state proceedings. *In re Lindsey*, 875 F.2d 1502 (11th Cir.1989); *Hill v. Lockhart*, 992 F.2d 801 (8th Cir.1993).

These cases dealt with whether fees should be paid for pursuing unexhausted state post-conviction procedures *after* filing for federal habeas relief. In other words, these cases dealt with attempts to circumvent the accepted notion that federal funds may not be used for state procedures by getting appointed in federal court before meeting the requirements of exhaustion of state claims. Mr. Hall and Mr. Lambert have not tried to manipulate the system in such a manner. They have simply argued that the Court has discretion to give the award.

The law in this area is troubling. The *Murray* plurality decision gave great weight to the fact that states are not constitutionally required to provide collateral proceedings as an adjunct to the state criminal proceedings. At the time of the *Murray* decision, only 7 of the 37 states which authorize the death penalty did not provide a system to monitor and assure that counsel would be provided prior to the filing of a post-conviction petition.[2] *Murray*, 492 U.S. at 31 n. 28, 109 S.Ct. at 2782 n. 28 (Stevens, J. dissenting). Two of those states [3] apparently appoint counsel automatically upon request. *Id.* At that time, one of the remaining five states had no prisoner under sentence of death [4], and another had none whose case had reached the state post-conviction stage.[5] *Id.* That leaves Virginia, Nebraska, and Arkansas. The *Murray* case involved the Virginia system, and much was made of the fact that "while Virginia has not adopted procedures for securing representation that are as far reaching and effective as those available in other States, no prisoner on death row in Virginia has been unable to obtain counsel to represent him in post-conviction proceedings, and Virginia's prison system is staffed with institutional lawyers to assist in preparing petitions for postconviction relief." *Id.* 492 U.S. at 14–15, 109 S.Ct. at 2773 (Kennedy, J., concurring). "Virginia courts presently have the authority to appoint counsel to represent any inmate in state habeas proceedings, . . ., and the Attor-

---

1. Indeed, there is a paucity of cases concerning application of this statute.

2. Those states were Virginia, Nebraska, Pennsylvania, Nevada, Colorado, New Hampshire, and Arkansas.

3. Pennsylvania and "perhaps Nevada". *Id.*

4. New Hampshire.

5. Colorado.

ney General represents that such appointments have been made, upon request, before the filing of any petition." *Id.* 492 U.S. at 20 n. 5, 109 S.Ct. at 2771 n. 5 (plurality opinion). Thus, it appears that, as of 1989, Arkansas may be one of only two states which does not *in fact* appoint counsel, automatically or upon request, for state post-conviction proceedings.[6]

■ Arkansas does provide for discretionary appointment of counsel for Rule 37 petitions. Ark.R.Crim.Pro.Rule 37.3. If a hearing is granted, counsel is required. *Id.* While states are not constitutionally required to furnish state post-conviction proceedings, the import of those proceedings if they are provided cannot be overstated. A federal court is precluded from granting post-conviction habeas corpus relief on the basis of a claim that was not first presented in a state court. *Wallace v. Lockhart,* 701 F.2d 719 (8th Cir.), *cert. denied,* 464 U.S. 934, 104 S.Ct. 340, 78 L.Ed.2d 308 (1983). A federal court is also barred from considering a claim until the petitioner's state remedies have been clearly exhausted. *See, e.g., Rogers v. Britton,* 466 F.Supp. 397 (E.D.Ark.1979). The rule that certain state court procedural defaults will bar a petition for federal habeas corpus extends to procedural defaults occurring in the course of state post-conviction proceedings, as well as to procedural defaults occurring at trial or on direct appeal in the state's courts.

At the time that this case arose, the time limit for filing a Rule 37 petition was 3 years; in 1990, it was amended to require filing within 90 days in cases where the defendant pleaded guilty or did not elect to appeal and sixty days where an appeal was taken. That time limit is strictly imposed.

■ In other words, an issue not raised at trial or on direct appeal, or not presented in a Rule 37 petition within 60 days of the appeal, may be forever barred in both state and federal court. While there are exceptions to procedural bars, the Supreme Court has substantially limited those exceptions in the past several years. Unless a habeas petitioner shows cause and prejudice, see *Wainwright v. Sykes,* 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977), a court may not reach the merits of a successive claim which raises grounds identical to grounds heard and decided on the merits in a previous petition, *Kuhlmann v. Wilson,* 477 U.S. 436, 106 S.Ct. 2616, 91 L.Ed.2d 364 (1986); new claims, not previously raised which constitute an abuse of the writ, *McCleskey v. Zant,* 499 U.S. 467, 111 S.Ct. 1454, 113 L.Ed.2d 517 (1991); *or procedurally defaulted claims in which the petitioner failed to follow the applicable state procedural rules in raising the claims. Murray v. Carrier,* 477 U.S. 478, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986) (emphasis added). If a prisoner fails to meet the cause and prejudice standard enunciated in *Wainwright,* a federal court may hear the merits of the successive claims only if the failure to hear the claims would constitute a "miscarriage of justice." *Sawyer v. Whitley,* — U.S. ——, 112 S.Ct. 2514, 120 L.Ed.2d 269 (1992). This is also referred to as the "actual innocence" exception. *Id.* The miscarriage of justice exception is concerned with actual as compared to legal innocence. *Smith v. Murray,* 477 U.S. 527, 106 S.Ct. 2661, 91 L.Ed.2d 434. In order to qualify for the "actual innocence" exception, the petitioner must show by clear and convincing evidence that but for constitutional error, no reasonable juror would have found him guilty. This is a high burden indeed, and the places even greater importance on the state proceedings and the importance of avoiding procedural default.

Death penalty jurisprudence is unquestionably difficult even for a trained lawyer. In apparent recognition of this fact, Congress has required that when a court appoints counsel in capital postconviction proceedings,

---

6. The Court attempted to determine the present law in the seven states which did not assure appointment of counsel. The Court was unable to determine the present law in New Hampshire and Colorado. It appears that Pennsylvania may provide counsel, either automatically or upon request. Nevada has changed its statutory scheme to require appointment of counsel for state habeas corpus petitions when it is the first petition. Even Virginia has changed its statutory scheme to require appointment of counsel upon request. Nebraska, and of course Arkansas, still leave appointment of counsel to court discretion.

at least one attorney must have been a member of the bar for at least five years and have at least three years felony litigation experience. 21 U.S.C. § 848(q)(5). It is not reasonable to expect a pro se prisoner to be able overcome those difficulties in state post-conviction proceedings.

One of the most commonly asserted errors, and one of the most common grounds for relief, is the ineffective assistance of counsel at the trial level. Under Arkansas law, "trial counsel, whether retained or appointed, shall continue to represent a convicted defendant throughout any appeal to the Arkansas Supreme Court, unless permitted by the trial court or the Arkansas Supreme Court to withdraw in the interest of justice or for other sufficient cause." Ark.R.Crim.Pro. 36.-26. It seems obvious that trial counsel will rarely assert ineffective assistance of counsel on direct appeal, so the issue will rarely have been raised prior to a Rule 37 petition. And that leaves the pro se prisoner on his own to figure out if his attorney was ineffective and, if so, why, all within 60 days, or he may never be able to assert the argument.

That did not happen here, because Mr. Lambert and Mr. Hall agreed to take this case pro bono. Issues which this Court might have been procedurally barred from considering were preserved for this Court's review by virtue of their work on the Rule 37 petition. Mr. Lambert and Mr. Hall have done a service to their community, the bar, and certainly to Mr. Wainwright in their representation, and they should not have to suffer financially for it.

■ Mr. Hall has filed impassioned pleadings with this Court regarding the treatment of his services by the Arkansas Supreme Court, and has attached pleadings, correspondence, and rulings from other cases he has had before the Arkansas Supreme Court as exhibits. This Court is troubled by the failure of the state to provide counsel, even upon request, for its own post-conviction proceedings. As the Eighth Circuit has stated: "A state that has elected to impose the death penalty should provide adequate funding for the procedures it has adopted to properly implement that penalty." *Hill v. Lockhart*, 992 F.2d at 803. However, the law, as stated by the United States Supreme Court in *Murray*, is that they do not have to do so. The summary refusal of the Arkansas Supreme Court to appoint counsel in this case, with a simple citation to the *Murray* decision, leaves unanswered the question of what standard the Arkansas Supreme Court is applying in the exercise of is discretion to appoint, or not to appoint, counsel. Thus we do not know if the Arkansas Supreme Court appoints counsel in such cases, or, if they do, what facts and circumstances it takes into account in making its decision.

■ As recently as 1992, the Arkansas statute governing appointed counsel had a fee cap of $1,000.00 for attorneys who defend indigents accused of capital murder or murder in the first degree. Ark.Code Ann. § 16–92–108(b)(2) [Repealed by Acts 1993, No. 1193, § 20]. That same statute provided for fees up to $350.00 per hour for all other cases. In other words, a lawyer who could ordinarily command a $350.00 fee would lose money if he spent more than 2.86 hours on a capital murder or first degree murder case. That statute was struck down as being unconstitutional in 1991 by the Arkansas Supreme Court in *Arnold v. Kemp*, 306 Ark. 294, 813 S.W.2d 770 (1991). That case held that the fee cap constituted an impermissible "taking" without just compensation and violated the equal protection rights of lawyers appointed to such cases. In spite of that decision, the Arkansas legislature did not take the law off of the books until two years later. And it has failed to replace that statute. It thus appears that at this time, there is no statutory authority for the granting of attorney fees for appointed counsel, although the Court is informed that the state courts continue to pay discretionary amounts to lawyers if they choose to appoint them.

Mr. Wainwright's case is not unusually simple or straightforward from a legal standpoint. Indeed, from this Court's review of the issues thus far, this case involves numerous and complex issues of law. This Court is having some difficulty with some of the issues; a pro se prisoner could drown in this sea. Nevertheless, this Court does not have the authority to provide a monetary remedy

for the state's omissions by providing federal funding for state procedures.

The Court will, however, authorize payment for all the work conducted for the federal habeas petition starting from their nunc pro tunc appointment when they began this case by reviewing the Attorney General's Motion to Dissolve the Stay of Execution on February 19, 1992. Mr. Hall will be paid at a rate of $165 per hour; Mr. Lambert at $110 per hour. The requested rate of $6.00 per hour for the research assistance of Keith Fortner, a student assistant, is granted. The submitted bills for the expert witnesses in this case are all accepted and approved. The bills for attorney expenses for meals and lodging, photocopying, mileage, and photographs are all approved.

Thus payment will be provided as follows:

Attorney hours:
   Lambert:     171 × $110.00 = $18,810.00
   Hall:       62.8 × $165.00 = $10,362.00

   Total:                   $29,172.00

Expenses:
   Travel, lodging, meals, photocopying, and photography after date of appointment = $794.49

Paralegal Services:
   Fortner:    13.25 × $6.00   =  $ 79.50

   Total:                  $ 79.50

Expert Witnesses:
   Dr. Robert Berry       $1,291.25
   Dr. Doug Stevens     $1,200.00
   Dr. Irving Stone      $ 256.00

   Total:                $2,747.25

(The amount for expert witnesses is accepted and approved, but is paid on a separate voucher, and is thus not included in the combined total below.)

<u>**Combined Total:**</u> $30,045.99

IT IS SO ORDERED.